07-0090-bk

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2008

Argued: October 14, 2008                    Decided: August 26, 2010

Docket Nos. 07-0090-bk(L); 07-0091-bk(Con); 07-0092-bk(Con);
07-0097-bk(Con); 07-0098-bk(Con); 07-0099-bk(Con)

_____

In re: Shayna H. Zarnel, Diana M. Finlay, Lena M. Elmendorf

DIANA G. ADAMS, United States Trustee

*Petitioner-Appellant*,

-v.-

SHAYNA H. ZARNEL, DIANA M. FINLAY, LENA M. ELMENDORF,

*Respondents-Appellees*.

_____

Before:        LEVAL, KATZMANN, and LIVINGSTON, *Circuit Judges*.

On appeal from the November 8, 2006 final judgment of the United States District Court for the Southern District of New York (Brieant, *J.*), petitioner-appellant Diana G. Adams, United States Trustee, argues that she has standing to appeal bankruptcy court orders striking the bankruptcy petitions of respondents-appellees and that, under the strictures of the Bankruptcy Code, the bankruptcy court was compelled to dismiss the cases of these debtors upon finding that they were ineligible for bankruptcy due to their failure to comply with credit counseling requirements. We conclude that the Trustee has standing to bring the appeal; that the appeal is not moot; and that the filing of a bankruptcy petition by a debtor who has failed to satisfy credit counseling requirements

commences a bankruptcy case and invokes the automatic stay.

VACATED and REMANDED.

STEPHANIE R. MARCUS, U.S. Department of Justice, Civil Division, Appellate Staff (Peter D. Keisler, Assistant Attorney General, Michael J. Garcia, United States Attorney, Danna Drori, Assistant U.S. Attorney, Roberta A. DeAngelis, Acting General Counsel, P. Matthew Sutko, Lisa A. Tracy, Sean E. Martin, Office of the General Counsel, *of counsel*, William Kanter, U.S. Department of Justice, Civil Division, Appellate Staff, *on the brief*), *for Petitioner-Appellant*.

SANFORD I. WEISBURST (William B. Adams, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *Court-Appointed Amicus Curiae on Behalf of Pro Se Debtors*.

LIVINGSTON, *Circuit Judge*:

This case requires us to interpret the interplay of provisions of the Bankruptcy Code that arises when an individual or entity files a petition for bankruptcy without complying with the credit counseling requirements created by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. In the course of our analysis, we interpret the credit counseling requirement, 11 U.S.C. § 109(h), the provisions that govern the commencement of bankruptcy cases, 11 U.S.C. §§ 301, 302, and 303, and the statutory section governing automatic stays, 11 U.S.C. § 362.

Petitioner-appellant Diana G. Adams, United States Trustee ("Trustee"), appeals from a final judgment entered November 8, 2006 in the United States District Court for the Southern District of New York (Brieant, *J.*) dismissing her appeal for lack of standing and in the alternative affirming the bankruptcy court's decision to strike the bankruptcy petitions filed by respondents-appellees

("debtors") rather than to dismiss their cases. We determine that the Trustee has standing to bring this appeal; that the appeal is not moot; and that the filing of a bankruptcy petition by a debtor who has failed to satisfy credit counseling requirements commences a bankruptcy case and invokes the automatic stay. We do not, however, pronounce on the question of what action a bankruptcy court may take with respect to such a petition given these determinations.

**BACKGROUND**

The appeal before this Court is of a consolidated matter, generated by three unrelated filings of bankruptcy in the United States Bankruptcy Court for the Southern District of New York. As the facts are not in dispute, we take them largely from the bankruptcy court's opinion. *See In re Elmendorf*, 345 B.R. 486 (Bankr. S.D.N.Y. 2006).

Lena Elmendorf, represented by counsel, filed a voluntary Chapter 7 petition on November 29, 2005. Although this proceeding was her first bankruptcy filing and her petition was accompanied by the correct schedules, she neither filed a credit-counseling certificate, *see* 11 U.S.C. § 521(b), nor sought an extension of time to do so, *see id.* § 109(h)(3)(A). The United States Trustee's Office ("Trustee") moved to dismiss the case on February 1, 2006. *In re Elmendorf*, 345 B.R. at 491.

Diana Finlay filed a Chapter 13 petition on April 3, 2006, as a *pro se* debtor, attaching none of the requisite schedules. She sought an extension of time to file her credit-counseling certificate, which the bankruptcy court denied for failure to state that the debtor sought counseling within five days of filing. *Id.* at 492. Finlay had recently filed two prior Chapter 13 petitions: one on August

3

31, 2005, and one on November 28, 2005. Both were dismissed for failure to file the appropriate bankruptcy schedules. *Id.* The Trustee filed a motion to dismiss the case on May 3, 2006.

Shayna Zarnel, the third relevant debtor, filed a Chapter 13 petition on March 13, 2006. Although this was Zarnel's first bankruptcy filing, her husband had filed five bankruptcy petitions with the court since January 2004. *Id.* She sought an extension of time to file her credit counseling certificate but failed to allege exigent circumstances meriting a waiver; the bankruptcy court therefore denied the extension. *Id.* at 493. On April 3, 2006, nonetheless, Zarnel filed a credit counseling certificate attesting that she had received counseling on March 21, 2006. The Trustee then moved to dismiss the case.

After holding a hearing on the motions in the Elmendorf and Zarnel proceedings, and reserving decision on the motions in all three cases, the bankruptcy court determined in a July 18, 2006 opinion to "strike" the case of each debtor rather than to dismiss each case as requested by the Trustee. *Id.* at 504-05. It arrived at this decision by examining the credit-counseling requirement codified at 11 U.S.C. § 109(h). The court observed that the provision, which it said "was intended to provide debtors with education as to all of their options when experiencing financial difficulty, *before* a resort to bankruptcy protection was necessary," had as a policy matter "not proven to be of assistance to debtors in seeking relief outside of the bankruptcy context." *Id.* at 490. The court nonetheless concluded that compliance with § 109(h)'s requirement that a debtor seek credit counseling before obtaining bankruptcy relief was "an absolute pre-requisite to individual bankruptcy eligibility." *Id.* at 495. The court acknowledged that debtors may in certain circumstances obtain an extension of time to receive counseling under § 109(h)(3)(A). The court

4

noted, however, that the difficulties of satisfying each of the statutory factors necessary to have a request for extension granted are substantial, particularly for a *pro se* debtor.[1] *Id.* at 496.

Relying on its reasoning in a previous case, *In re Rios*, 336 B.R. 177 (Bankr. S.D.N.Y. 2005), the bankruptcy court found that the statutory language of § 109(h), which provides that an individual "may not be a debtor" without prior credit counseling, bars such filers from commencing a case under 11 U.S.C. § 301. *In re Elmendorf*, 345 B.R. at 497. Moreover, if a case is not commenced, the court determined, the automatic stay against creditor actions provided for in 11 U.S.C. § 362 does not operate to protect the ineligible filer. *Id.* at 497-98. Nonetheless, it found that it still had jurisdiction over the matter even if a case was not properly commenced by the filing. *Id.* at 499. Therefore, under the equitable powers granted by 11 U.S.C. § 105(a), the bankruptcy court determined that because Congress had not explicitly directed the action a court should take in response to a bankruptcy petition failing to commence a case, it had the power to strike the petitions before it rather than to dismiss the cases, as urged by the Trustee.[2] *Id.* at 503. The court noted that

---

[1]The court noted that before an extension of time to receive credit counseling may be granted, "a debtor must submit to the court (1) a certification (2) describing exigent circumstances that (3) merit a waiver of the requirement, (4) states that the debtor requested credit counseling from an approved nonprofit budget and credit counseling agency, but was unable to obtain services during the five day period beginning on the date that debtor made the request and (5) which is satisfactory to the Court." *Id.* at 496 (footnotes omitted).

[2]11 U.S.C. § 105(a) provides as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

in its view dismissal, which has the potential effect of limiting access to or the duration of § 362's automatic stay in a subsequent filing, is for the most part "an inappropriate remedy for a debtor's innocuous failure to obtain counseling, prior to filing a bankruptcy petition," *id.* at 491, and it concluded that it could always strike a case with prejudice to future filings if it found such a measure to be warranted by a filer's bad faith or other such circumstances, *id.* at 504.

Because Elmendorf had not filed any previous bankruptcy petitions nor were there other indications of bad faith, the court ordered her case stricken without prejudice. *Id.* In the case of Finlay, the bankruptcy court noted that the debtor had filed "three back-to-back bankruptcy petitions," and that she "sought, and obtained, an extension of time to file her credit counseling certificate in her prior case," and was thus "not ignorant of the requirement." *Id.* Noting that "[t]he circumstances in Ms. Finlay's filings are indicative of a pattern of delay and an abuse of the provisions of Section 362," relating to the automatic stay, the court suggested that it might have been "inclined to grant some sort of preclusive relief," but because the Trustee had not requested any relief other than dismissal, the court merely struck the case without prejudice. *Id.* at 504-05. Finally, it also struck Zarnel's case without prejudice on the ground that, although her husband had repeatedly filed for bankruptcy, this was Zarnel's first filing. *Id.* at 505. Acting on its own volition, the bankruptcy court then certified its orders for direct appeal to this Court under 28 U.S.C. § 158(d)(2). On November 17, 2006, we consolidated and dismissed those appeals because no party had filed a petition for permission to appeal under Federal Rule of Appellate Procedure 5(a).

The Trustee appealed the bankruptcy court's decision in each instance to the district court

6

on the issue of whether the bankruptcy court had erred in ruling that the petitions of ineligible debtors had not commenced cases and that the petitions could thus be struck rather than dismissed. *Adams v. Finlay*, No. 06 civ. 6039, 2006 WL 3240522 (S.D.N.Y. Nov. 3, 2006). In its opinion of November 3, 2006, the district court *sua sponte* raised the issue of the Trustee's standing to appeal the denials of its motions to dismiss. Applying the bankruptcy standing test of this Court that requires an appellant to be a "person aggrieved," meaning "a person 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court,'" *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991) (quoting *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir. 1985)), the district court found that the Trustee was not aggrieved because no creditor's rights were affected by these decisions and no substantive actions had been taken between the filing and the striking of the cases. Therefore, it held, the Trustee lacked standing to appeal. It nonetheless proceeded to decide the merits in the alternative after confessing that it had "no great confidence" in its standing determination. *Finlay*, 2006 WL 3240522, at *4.

The district court concluded that the bankruptcy court's interpretation of the interplay between §§ 109(h), 301, and 362(a) was the correct one – that a case is not commenced nor does the automatic stay come into existence when a bankruptcy petition is filed by an individual who fails to fulfill the credit-counseling requirement. It then expounded on the court's equitable powers, noting that motions to strike pleadings, although fallen from favor, were once common in the federal courts and have not since that time been prohibited. Furthermore, it added, Federal Rule of Civil Procedure 12(f) permits a court to strike a pleading, as do Bankruptcy Rules 7012(b) and 9011. Given the latitude provided the bankruptcy court under § 105(a), the district court found it was not

beyond the bankruptcy court's judicial powers to strike the petition of a debtor who has not satisfied the credit counseling requirement and thus has not commenced a case. Therefore, in the alternative to dismissing the appeals for want of standing, it affirmed the bankruptcy court's orders in all respects.

The Trustee timely appealed the district court's decision to this Court. In order to assist in the development of arguments on appeal, this Court appointed Sanford I. Weisburst, Esq. amicus curiae on behalf of the pro se debtors ("Amicus"). The debtors have not appeared in this appeal.

**DISCUSSION**

Before reaching the merits of this appeal, we must first determine whether we have jurisdiction. Issues arise both from the Trustee's standing to take this appeal and its potential mootness. We review these legal issues *de novo*. *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 128 (2d Cir. 2008); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 197 (2d Cir. 2005).

**I. Standing**

Section 307 of the Bankruptcy Act authorizes the Trustee to "raise and [ ] appear and be heard on any issue in any case or proceeding under this title." 11 U.S.C. § 307. Despite that broad authorization, *cf. In re Columbia Gas Sys.*, 33 F.3d 294, 296 (3d Cir. 1994) ("[i]t is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing"), the district court concluded that the Trustee did not have standing to appeal the denial of its motions to dismiss.

We disagree with that determination.

As the district court correctly noted, in determining whether a party has standing to appeal from a particular ruling of a bankruptcy court, we have frequently looked to whether an appellant is a "person aggrieved" that is, "a person 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court." *Int'l Trade Admin.*, 936 F.2d at 747 (quoting *In re Cosmopolitan Aviation Corp.*, 763 F.2d at 513); *see also* 11 U.S.C. § 67(c) (1976) (repealed 1978) (permitting appeal by a "person aggrieved by an order of a referee"). Applying that standard, the district court determined that the Trustee had no direct pecuniary interest in the outcome of this litigation and accordingly lacked standing. We disagree.

While the "pecuniary interest" formulation is an often used and often useful test of standing in the bankruptcy context, it "is not the only test." *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990). Instead, even absent a direct pecuniary interest in the litigation, "a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." *Id.* (emphasis in original); *see also In re Clark*, 927 F.2d 793, 796 (4th Cir. 1991) ("[S]tanding to appeal under the Bankruptcy Act as a 'party aggrieved' may arise from a party's official duty to enforce the bankruptcy law in the public interest"). The Supreme Court has thus determined, for instance, that the Securities and Exchange Commission's interest in "the maintenance of its statutory authority and the performance of its public duties" was sufficient to give the Commission standing to pursue a bankruptcy appeal. *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459-60 (1940).

Applying *U.S. Realty* and the "public interest" standard, several of our sister circuits have concluded that the U.S. Trustee has just such an interest and thus standing to pursue bankruptcy

9

appeals. As the Sixth Circuit explained in reasoning adopted by the First and Third Circuits, "the U.S. trustees are responsible for 'protecting the public interest and ensuring that bankruptcy cases are conducted according to law.' That is the interest the U.S. trustee has pursued in this case, and that interest gives him standing to appeal." *In re Revco D.S., Inc.*, 898 F.2d at 499 (internal citation omitted); *see also In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820, 824 (1st Cir 1990) (standing derives from "the U.S. Trustee's interest from his statutory responsibility to represent and protect the public"). The Fourth Circuit similarly concluded, in reliance on *U.S. Realty*, that the U.S. Trustee had standing in the matter before that court because the "trustee [was] attempting, as was the SEC in *United States Realty*, to enforce the law in the public interest–in this case the interest of the public in avoiding substantial abuse of the bankruptcy process." *In re Clark*, 927 F.2d at 796.

We find the reasoning of those courts to be persuasive and conclude that the U.S. Trustee's responsibility to represent and protect the public interest affords it a substantial interest in, and therefore standing to proceed with, this appeal.

**II. Mootness**

Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies; a case is moot if "the parties lack a legally cognizable interest in the outcome" of the case. *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140

10

(2d Cir. 1994) (quoting *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted). This occurs "when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998). A bankruptcy case may also be mooted based on "jurisdictional and equitable considerations" related to difficulty in fashioning "fair and effective judicial relief." *AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 755 (2d Cir. 2010) (quoting *In re Sasso*, 409 B.R. 251, 254 (B.A.P. 1st Cir. 2009)) (internal quotation marks omitted).

The debtors, by failing to appeal the bankruptcy court's order striking their cases, have waived any argument that they have satisfied the credit counseling requirements of 11 U.S.C. § 109(h) and should have been allowed to proceed with their bankruptcies. Therefore, neither party has a legally cognizable interest in this appeal related to its effect on the proceedings that initiated the case. However, the effects of the bankruptcy court's decision to strike the petitions rather than dismissing the cases, the question on appeal, extend beyond the matter immediately at hand. Under 11 U.S.C. § 362(c)(3), the automatic stay protecting the debtor's assets, which comes into being when a petition is filed, terminates after thirty days if "a single or joint [bankruptcy] case of the debtor was pending within the preceding 1-year period but was dismissed." Similarly, if the debtor has had two bankruptcy cases pending within the preceding year that were dismissed, the automatic stay does not go into effect upon a third filing.[3] *Id.* § 362(c)(4). Because, under the plain language

---

[3]With regard to both of these provisions, the debtor may seek relief from the bankruptcy court, which is authorized to institute or extend an automatic stay, as appropriate, if the debtor demonstrates that the filing of the later case was in good faith as to the creditors to be stayed. 11

of § 362(c)(3) and (c)(4), only the "dismiss[al]" of a prior bankruptcy case triggers these provisions," the manner in which the bankruptcy court disposes of the matter appears likely to affect whether the limitations on the automatic stay for subsequent proceedings take effect. Within a year of the striking of their petitions, therefore, the debtors clearly had a legally cognizable interest in the outcome of this appeal, as did the Trustee, whose duty to protect the public interest is affected by debtors avoiding what it alleges are the appropriate legal consequences of their actions.

The bankruptcy court struck the petitions at issue here on July 28, 2006. More than a year has passed since that decision. Both the Trustee and Amicus argue that the case is nonetheless not moot, but provide different reasons. The Trustee suggests that the word "pending" in § 362(c)(3) and (c)(4) encompasses the time during which the case is on appeal, and hence that the year period given in the statute has not yet even begun. The debtors and the Trustee would therefore maintain their legally cognizable interests in the outcome for the duration of the appeal. Amicus, however, argues that "pending" covers only the period in which the case is pending in the bankruptcy court and that the automatic stay repercussions for a debtor end a year after the case is dismissed, even if that dismissal is appealed. It invokes the exception to mootness for cases "capable of repetition, yet evading review." *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (quoting *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998)) (internal quotation marks omitted). This exception applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* at 114 (alterations in original) (quoting *Weinstein*

U.S.C. § 362(c)(3)(B), (c)(4)(B).

12

*v. Bradford*, 423 U.S. 147, 149 (1975)) (internal quotation marks omitted).

We conclude that we need not interpret § 362(c) at the present time. The parties present the only two logical possibilities for the meaning of the word "pending" in this context, and we agree with each party that under its interpretation of the statute the case is not moot. If a case is pending for the purpose of § 362(c)(3) and (c)(4) during the period on appeal, then each party continues to have a legally cognizable interest because the manner in which the bankruptcy court disposed of the debtors' cases is likely to affect any subsequent proceedings in which they may be involved for a year after this appeal is concluded. If, on the other hand, the year period delineated in the statute has already expired, then we conclude that the "capable of repetition, yet evading review" doctrine applies. The first element is clearly fulfilled under this interpretation, because a year is too short to pursue an appeal to its conclusion. The second element is also satisfied because the bankruptcy court will apply its interpretation of the relevant statutory provisions in future cases. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) ("[T]his case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections.") Thus, the bankruptcy court will persist in striking petitions rather than dismissing cases, causing repeated injury to the Trustee's interest. This indicates that under Amicus's interpretation of the statute, the appeal is not moot. Because we need only assure ourselves that we are deciding a live case or controversy, and because Article III jurisdiction exists under both interpretations of the statute, we pass on to the merits of the appeal before us.

**III. Whether a Case is Commenced**

13

The question before us arises primarily from the interplay of two statutory sections of the Bankruptcy Code: 11 U.S.C. § 301 and 11 U.S.C. § 109(h). Section 301(a), part of the subchapter entitled "Commencement of a Case," reads as follows: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." Section 109, titled "Who may be a debtor," contains a list of requirements that must be satisfied before an entity or individual, as the case may be, is eligible for bankruptcy. As part of BAPCPA, Congress amended § 109 to add subsection (h). Pub. L. No. 109-8, § 106, 119 Stat. 23, 37 (2005). Subsection (h) begins as follows: "Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under [the Bankruptcy Code] unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received [credit counseling]." 11 U.S.C. § 109(h)(1). The remaining paragraphs provide exceptions for debtors who reside in areas where there is no such available credit counseling, for debtors who can certify that they have exigent circumstances and have made appropriate efforts to obtain counseling, and for those incapacitated, disabled, or on active military duty in a combat zone. *Id.* § 109(h)(2)-(4).

As the bankruptcy court's decision noted, these two provisions may be read to suggest that, since an individual "may not be a debtor" unless he has received credit counseling congruent with the requirements of § 109(h) and under § 301 he may not commence a case unless he "may be a debtor," a debtor who fails to obtain pre-petition credit counseling and yet files a bankruptcy petition has not actually commenced a case. *In re Elmendorf*, 345 B.R. at 497. Informed by this conclusion, the bankruptcy court reasoned further that striking the petition was the appropriate procedural

14

method to dispose of the filing, rather than "dismiss[ing] the case" as provided for in 11 U.S.C. § 707.[4] Amicus argues for this interpretation on appeal; the Trustee contends instead that a case is commenced when an ineligible individual files for bankruptcy, and that the case must be dismissed.

An additional twist arises from the automatic stay provision. Section 362(a) of the Code states that "a petition filed under section 301, 302, or 303 of [the Bankruptcy Code] . . . operates as a stay." Section 362(c)(3)-(4), in turn, sets forth limitations on the automatic stay applicable to subsequent cases by the same petitioner. Under § 362(c)(3), where a "case of the debtor was pending within the preceding 1-year period but was dismissed," the automatic stay is limited to 30 days unless the debtor is able by clear and convincing evidence to rebut a presumption that the later case was not filed in good faith. Moreover, § 362(c)(4) states that "if 2 or more . . . cases of the debtor were pending within the previous year but were dismissed, . . . the stay . . . shall not go into effect upon the filing of the later case," and the debtor may obtain a stay only if he is able to demonstrate that the filing of the later case is in good faith. The bankruptcy court, interpreting the interplay among §§ 109(h), 301, and 362(a), concluded "that the automatic stay comes into existence only when a case is filed in accordance with §§ 301, 302, or 303 of the [Code]." *In re Elmendorf*, 345 B.R. at 498. Under this reading, when a petition is filed but no case is commenced, the automatic stay does not come into effect. Amicus urges us to reject this interpretation and instead find that the filing of the petition, not the commencing of a case, is sufficient to institute the automatic stay.

---

[4]Section 707 provides that a bankruptcy court "may dismiss a case" for cause after notice and a hearing. 11 U.S.C. § 707(a).

Of the bankruptcy and district courts to consider this statutory tangle so far, a majority have sided with the Trustee and found that debtors such as the ones in the case at bar should have their cases dismissed. *See, e.g.*, *In re Crawford*, 420 B.R. 833, 838 & n.7 (Bankr. D.N.M. 2009) (collecting cases); *In re Jones*, 352 B.R. 813, 821 (Bankr. S.D. Tex. 2006) (same); *In re Seaman*, 340 B.R. 698, 703, 706 n.3 (Bankr. E.D.N.Y. 2006). Of the minority of courts that recognize the option of striking the petition of a debtor ineligible under § 109(h), some agree with the bankruptcy court in this case that such a petition "does not trigger the protections of the automatic stay" under § 362(a), *In re Elmendorf*, 345 B.R. at 498-502. *See, e.g.*, *In re Salazar*, 339 B.R. 622, 632-33 (Bankr. S.D. Tex. 2006). Finally, some courts have ruled in line with Amicus's conclusion that the petition's filing does trigger an automatic stay but does not commence a dismissible case when the petitioner is ineligible under § 109(h). *See In re Thompson*, 344 B.R. 899, 905-08 (Bankr. S.D. Ind. 2006), *vacated as moot by* 249 F. App'x 475 (7th Cir. 2007).

In constructing its argument, Amicus places emphasis on the language of § 301, which provides that a "voluntary case under a chapter of [the Bankruptcy Code] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that *may be a debtor* under such chapter." 11 U.S.C. § 301(a) (emphasis added). Amicus suggests that the phrase "may be a debtor" should be interpreted as barring a debtor ineligible for bankruptcy under § 109(h) from commencing a "case." The Trustee, citing authority rejecting this position, counters that "the word 'may' as used in the § 301 of the Bankruptcy Code means 'might' or is meant to express a 'possibility.'" *In re Tomco*, 339 B.R. 145, 159 (Bankr. W.D. Pa. 2006). We conclude that § 301, as well as §§ 302 and 303 ("Voluntary cases," "Joint cases," and "Involuntary cases," respectively),

16

define the prerequisites for relief under particular chapters of the Bankruptcy Code, rather than the existence in a jurisdictional sense of a voluntary, joint, or involuntary case. We thus reject the position of Amicus that a debtor ineligible for bankruptcy pursuant to § 109(h) does not commence a case by filing a petition pursuant to § 301.

Each of the three parallel sections implicated here contains limiting language indicating that it is referencing a particular type of case, whether voluntary, joint, or involuntary, that in turn is treated in a separate chapter of the Bankruptcy Code. Sections 301, 302 and 303 thus each provide that a case under a given chapter is commenced by the filing of a petition by a petitioner "that may be a debtor *under such chapter*." *See* 11 U.S.C. §§ 301-03 (emphasis added). This limiting language in all three sections suggests that the sections are not concerned with determining the existence of a "case" in the broader sense — *i.e.*, "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." BLACK'S LAW DICTIONARY 243 (9th ed. 2009) (defining "case"). Rather, they clarify that, when a debtor commences a case, the debtor is not eligible for relief under a particular chapter of the Bankruptcy Code unless it meets the requirements to be a debtor under that chapter. Other provisions in the Code place similar emphasis on the existence of chapter-specific requirements for debtors. *See, e.g.*, 11 U.S.C. §§ 706(d), 1112(f), 1307(g) ("[A] case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."); *see also* H.R. Rep. 95-595, at 380, 406, 428 (Sept. 8, 1977), 1978 U.S.C.C.A.N. 5963, 6336, 6362, 6384 (providing that the limitations on conversion are meant to reinforce § 109).

The reading of § 301 proposed by Amicus, moreover, is inconsistent with other provisions of the Bankruptcy Code. While claiming that the interpretation of § 301 permitting dismissal

17

"ignores the distinction between 'case' and 'petition,'" Amicus itself ignores the Bankruptcy Code's definition of petition: "The term 'petition' means petition filed under section 301, 302, 303, or 304 of this title, as the case may be, *commencing a case under this title*." 11 U.S.C. § 101(42) (emphasis added). Thus, a petition filed under §§ 301, 302, or 303 both "operates as a stay," *id.* § 362(a), and commences a bankruptcy case, *id.* § 101(42). *See, e.g.*, Michael Newman, Comment, *BAPCPA's New Section 109(h) Credit Counseling Requirement: Is It Having the Effect Congress Intended?*, 2007 UTAH L. REV. 489, 511. And while Amicus's theory that the automatic stay may come into effect upon the filing of a petition, even though a case is not commenced, is superficially plausible pursuant to the language of § 362(a) (providing that "a petition filed under section 301, 302, or 303 . . . operates as a stay"), this theory falls apart when one attempts to determine the date that such a stay terminates. Under § 362(c)(2), most actions remain stayed under § 362(a) "until the earliest of (A) the time the *case is closed*; (B) the time the *case is dismissed*; or (C) *if the case is a case under chapter 7* of this title concerning an individual *or a case under chapter 9, 11, 12, or 13* of this title, the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2) (emphasis added). We determine, therefore, that although an individual may be ineligible to be a debtor under the Bankruptcy Code for failure to satisfy the strictures of § 109(h), the language of § 301 does not bar that debtor from *commencing* a case by filing a petition; it only bars the case from being maintained as a proper voluntary case under the chapter specified in the petition.

Although our conclusion in this respect comes into conflict with the reasoning in this Court's decision in *In re BDC 56 LLC*, 330 F.3d 111 (2d Cir. 2003), which held that the eligibility requirements of § 303 were jurisdictional in nature, we conclude that as a result of recent Supreme

18

Court precedent, that case is no longer good law. Section 303 provides, in relevant part, as follows:

> (a) An involuntary case may be commenced . . . only against a person, except a farmer . . . that may be a debtor under the chapter under which such case is commenced.
> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition . . . by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . .
> (c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor . . . may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
> . . .
> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. . . .
> . . .
> (j) Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section — (1) on the motion of a petitioner; (2) on consent of all petitioners and the debtor; or (3) for want of prosecution.

11 U.S.C. § 303. As discussed above, under the interpretation we grant to the language "may be a debtor under the chapter under which such case is commenced," a case is commenced under § 303 even if the debtor is ineligible by virtue of, for example, being a farmer. Similarly, the ineligibility of creditors under the restrictions in § 303(b) does not prevent the case from being commenced. This reading is supported, moreover, by the provisions of § 303(c), (h), and (j). Under § 303(c), a creditor may join in the petition after it is filed — before the *case* is dismissed — with the effect being as if the creditor had been part of the initial filing. Were there no case in existence because of an insufficiency of eligible creditors at the outset, it would be impossible for new creditors to join it by joining the petition. Moreover, § 303(h) and (j) provide for the bankruptcy court to order relief

19

or dismiss a case based on whether debtors and creditors take given actions. Surely relief cannot be so granted, or the matter not dismissed in the absence of a motion to do so, if a case did not exist in the first place.

Subject matter jurisdiction under title 11 proceedings in the bankruptcy courts is provided by 28 U.S.C. § 1334(a), which states that, with some given exceptions, "the district courts shall have original and exclusive jurisdiction of all cases under title 11." District courts may, under 28 U.S.C. § 157(a), "provide that any or all cases under title 11 . . . shall be referred to the bankruptcy judges for the district." The most straightforward reading of these provisions is that if a case exists under title 11, the district court (and the bankruptcy court, if so invoked by § 157(a)) has jurisdiction over it. The contrapositive of this statement, then, is also true: if the court has no jurisdiction, then there is no case under the Bankruptcy Code. In *In re BDC 55 LLC*, we stated:

> At least one circuit . . . has held that the requirement that a petitioning creditor's claim not be subject to a bona fide dispute[, found in § 303(b),] is not jurisdictional, but is "an element that must be established to sustain an involuntary proceeding."
>
> We believe the more sound view is that the requirement is subject matter jurisdictional, and now so hold. Whether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings. One of the requirements to bringing such a petition is that the petitioning creditors' claims are free from bona fide dispute. Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement. Otherwise, creditors could, on the basis of relatively untested claims, haul a solvent debtor with whom they have legitimate disputes into bankruptcy court and force it to defend an involuntary proceeding while the bankruptcy court leaves for a later merits determination whether the debtor is even properly before it.

20

330 F.3d at 118-19 (quoting *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985)) (internal citations and footnote omitted).  This holding, then, necessarily indicates that if the requirements of § 303 are not met, no case exists — nor, presumably, was commenced — under title 11.

This panel is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).  However, if "there has been an intervening Supreme Court decision that casts doubt on our controlling precedent," one panel of this Court may overrule a prior decision of another panel.  *Gelman v. Ashcroft*, 372 F.3d 495, 499 (2d Cir. 2004) (quoting *Union of Needletrades, Indus. & Textile Employees v. U. S. I.N.S.*, 336 F.3d 200, 210 (2d Cir. 2003)) (internal quotation marks omitted).  The intervening decision need not address the precise issue decided by the panel for this exception to apply.  *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).[5] Since our holding in *In re BDC 56 LLC*, the Supreme Court has clarified the distinction between "two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006).  In a unanimous decision, the Court held that a clear statement by Congress was required to construe a threshold limitation on the scope of a statute as jurisdictional.  *Id.* at 515-16.  "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.  Therefore, a limitation on

[5] In addition, prior to filing this opinion has been circulated to all the judges of this Court. *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009); *United States v. Crosby*, 397 F.3d 103, 105 n.1 (2d Cir. 2005).

Title VII claims based on whether the defendant-employer had a particular number of employees was nonjurisdictional because the limitation "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," the statute contains an express jurisdictional provision in a different portion from the limitation, there was no evidence in the statutory text that Congress intended the requirement to be *sua sponte* monitored by the courts, and consideration of the limitation after a judgment on the merits would be unfair and wasteful. *Id.* at 514-16; *see also In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1043 (11th Cir. 2008). This "readily administrable bright line," *Arbaugh*, 546 U.S. at 516, now guides our consideration of whether § 303 contains restrictions on the bankruptcy court's jurisdiction.

We find that, in light of *Arbaugh*, *In re BDC 56 LLC* can no longer be considered good law on this point. As the Eleventh Circuit noted in evaluating the same question, § 303 "contains no explicit reference to its requirements being jurisdictional in nature and never uses the word 'jurisdiction.'" *In re Trusted Net Media Holdings, LLC*, 550 F.3d at 1043.[6] Nor does the text of the statute suggest that the bankruptcy court should *sua sponte* raise the issue of whether the requirements of § 303 are satisfied; in fact, § 303(h) provides the opposite, since the bankruptcy court should order relief if the petition is not timely controverted. Moreover, the Bankruptcy Code is governed by a separate jurisdictional provision, 28 U.S.C. § 1344, which contains other restrictions and exclusions. In sum, the restrictions of § 303 fall decisively on the nonjurisdictional

---

[6]The Fifth and Eighth Circuits held that the requirements of § 303(a) were not jurisdictional pre-*Arbaugh*; the Ninth Circuit similarly so held for § 303(b). *See In re Marlar*, 432 F.3d 813, 814-15 (8th Cir. 2005) (per curiam); *In re McCloy*, 296 F.3d 370, 375 (5th Cir. 2002); *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985).

side of *Arbaugh*'s bright line.

Similarly, we find that the restrictions of § 301 and § 109(h) are not jurisdictional, but rather elements that must be established to sustain a voluntary bankruptcy proceeding. Restricting whether an individual may be a debtor either under the Bankruptcy Code in general or under a given chapter does not speak in jurisdictional terms or invoke the jurisdiction of the district court, delineated in 28 U.S.C. § 1344 as discussed above. Certainly, consideration of these limitations after other decisions on the merits have taken place would be wasteful and unfair; because bankruptcy is a swift-moving process involving multiple parties, "creditors and other parties in interest have a considerable interest in being able to rely on the existence of a case, the bankruptcy court's jurisdiction, and the validity of actions taken in the case" in order to facilitate asset-preserving transactions. *In re Ross*, 338 B.R. 134, 140 (Bankr. N.D. Ga. 2006). This decision, moreover, is in line with pre-BAPCPA decisions from our sister circuits and in this circuit finding that other provisions of § 109 are not jurisdictional. *See, e.g.*, *Rudd v. Laughlin*, 866 F.2d 1040, 1042 (8th Cir. 1989) ("Nor do we believe that 11 U.S.C. § 109 is meant to restrict the jurisdiction granted under [28 U.S.C. §§ 1334, 157]."); *In re Phillips*, 844 F.2d 230, 235 n.2 (5th Cir. 1988) (finding § 109(g) nonjurisdictional); *In re Flores*, 291 B.R. 44, 52-53 (Bankr. S.D.N.Y. 2003) (same), *superseded by* BAPCPA, Pub. L. No. 109-8, § 303(b), 119 Stat. at 78.

Some additional support for our conclusion that a case has been commenced when debtors ineligible for relief under § 109(h) file a bankruptcy petition may be gleaned from cases interpreting 11 U.S.C. § 342(b), which provides that "[b]efore the commencement of a case under this title by an individual whose debts are primarily consumer debts, the clerk shall give to such individual

23

written notice containing . . . a brief description of" bankruptcy proceedings, credit counseling services, and legal consequences from fraudulent findings. If we were to interpret the language regarding commencement of a case in this section as the bankruptcy court did the language of § 301 and § 109(h), the provision would suggest that a case is not commenced if the would-be debtor is not given the statutorily required notice. Courts considering the question have not so held. *See, e.g.*, *In re Guth*, No. 02-02121, 2002 WL 31941460, at *4 (Bankr. D. Idaho Nov. 8, 2002); *In re Bryant*, 51 B.R. 729, 731-32 (Bankr. N.D. Miss. 1985).

**IV. Whether the Automatic Stay is Triggered**

Having determined that a case is commenced, we turn to the question whether the automatic stay takes effect when a petition is filed by a debtor ineligible under § 109(h). We conclude that it does. Section 362, which outlines the basic commencement, effect, and termination of the automatic stay, provides significant indications to that effect. As an initial matter, the section contains language suggesting that the stay accompanies a commenced case:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay . . . of — (1) the commencement or continuation . . . [of an] action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor . . . , of a judgment obtained before the commencement of the case under this title.

11 U.S.C. § 362(a). Section 362(b) lists circumstances under which the filing of a petition does not operate as a stay, but the debtor's ineligibility is not among them. Moreover, none of the mechanisms outlined in the remainder of the statute for confirming the existence of a stay or for

24

granting relief from one address anything related to the ineligibility of a debtor.

In addition, the bankruptcy court's interpretation of § 362 renders a nullity BAPCPA's enactment of § 362(b)(21)(A). Section 362(b)(21)(A) provides that certain actions against real property are not stayed when "the debtor is ineligible under section 109(g) to be a debtor in a case under this title."[7] As *In re Ross* notes, if an action by a person ineligible under § 109(g) were "void *ab initio* and did not result in an automatic stay under existing law, such an amendment would not have been necessary." 338 B.R. at 139; *see also In re Racette*, 343 B.R. 200, 203 (Bankr. E.D. Wis. 2006). As discussed above, no such exception is provided for debtors ineligible under § 109(h), which leads us to the conclusion that the automatic stay commences in such cases. The bankruptcy court purported to distinguish § 109(h) from § 109(g) by characterizing ineligibility under the latter provision as a failure that may be cured or "waived" by the court, rendering it possible that the automatic stay could go into effect notwithstanding such a failure — and thus conceivable that a provision specifying circumstances in which it should not would be necessary. *See In re Elmendorf*, 345 B.R. at 499-500. We agree with the Trustee that this is not a tenable distinction. The wording of § 109(g) is no less mandatory that the wording of § 109(h). Moreover, even assuming that the

---

[7]Section 109(g) provides as follows:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if —
(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

legislative history cited by the bankruptcy court for its description of § 109(g) is properly considered, it does not support the conclusion that the requirements of the subsection are curable.

Amicus and the Trustee both correctly observe that our decision in *In re Casse*, 198 F.3d 327 (2d Cir. 1999), does not undermine the conclusion that an ineligible debtor's petition gives rise to an automatic stay. Under separate but analogous circumstances, *Casse* affirmed the bankruptcy court's dismissal of a case "nunc pro tunc" to the date of filing and approved of annulling a stay per § 362(d), *id.* at 332, 342, rulings that indicate *Casse* recognized the stay as having initially gone into effect. *See Ross*, 338 B.R. at 137 n.4; *In re Flores*, 291 B.R. at 57-58; Robert Lefkowitz, Note, *The Filing of a Bankruptcy Petition in Violation of 11 U.S.C. § 109(g): Does It Invoke the Automatic Stay?*, 26 CARDOZO L. REV. 297, 309 (2004).

Finally, we note that having the automatic stay commence even when a debtor fails to satisfy the credit-counseling requirements both fits into the overall purpose and framework of the stay and ensures that eligible debtors receive protection from the bankruptcy system. The automatic stay serves a number of purposes: "providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006). Much of the value of the stay is in the clarity of its implementation; once a debtor files for bankruptcy and the stay is in effect, creditors must cease their individual attempts to gain repayment and operate only through the bankruptcy court. This centralization ensures a fair distribution of assets if the debtor proceeds through bankruptcy. If it were unclear whether the stay was in place immediately following a debtor's filing for bankruptcy,

creditors would likely continue their collection efforts "in hopes that the bankruptcy court would find no merit in the debtor's petition. Thus, rather than providing the debtor with automatic breathing space, the Code would pressure the debtor to file correctly in the first instance or risk losing the protections of Title 11 due to the actions of several unscrupulous creditors." *Shaw v. Ehrlich*, 294 B.R. 260, 268 (Bankr. W.D. Va. 2003). Even a debtor who filed correctly might face challenges outside the bankruptcy court from particularly aggressive creditors hoping that a filing correct on its face had an underlying flaw that would redound to their advantage. Construing a debtor's ineligibility pursuant to § 109(h) as creating an exception to the automatic stay provision, therefore, is a tenuous proposition given the statutory framework provided by Congress. Our interpretation, in contrast, we believe supports and furthers that framework.

**V. Whether the Bankruptcy Court Must Dismiss the Cases**

Having concluded that no case had commenced and no automatic stay had been triggered in the cases of the three debtors here, the bankruptcy court chose as the appropriate method of disposing of the matters to exercise its equitable powers under 11 U.S.C. § 105(a) and strike the debtors' petitions. *See In re Elmendorf*, 345 B.R. at 503-05. The Trustee urges us to determine that the only proper method of disposing of the matter of a debtor ineligible under § 109(h) is dismissal. At this time, we need not, and do not, determine what actions the bankruptcy court may have taken on the petitions. Rather, we remand to the bankruptcy court for it to consider in the first instance the ramifications of our determination in the circumstances presented here that cases have commenced. The bankruptcy court's determination that its equitable powers included striking the

petitions was premised on the belief that there were no cases to dismiss. While we note that we are unaware of any case similar to this one in which a court has determined that a case has commenced and yet taken an action other than dismissal, the bankruptcy court did not address whether other actions, including striking a petition, might be appropriate in these circumstances. We thus conclude that this is a question for the bankruptcy court to address initially. *See In re Morgan*, 182 F.3d 775, 780 (11th Cir. 1999) ("Since the applicability and use of § 105(a) is a decision that is typically left to the bankruptcy court, we leave the decision to the bankruptcy court in this case.").

**CONCLUSION**

For all of the foregoing reasons, the judgment of the district court is **VACATED** and the case is **REMANDED** to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion. We thank amicus counsel, Sanford I. Weisburst and William B. Adams of Quinn Emanuel Urquhart & Sullivan, LLP, for their helpful brief and oral argument.