12-3207-cv
Federal Housing Fin. Agency v. UBS Americas Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2012

(Argued:  November 26, 2012    Decided:  April 5, 2013)

Docket No. 12-3207-cv

———————————

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL NATIONAL
MORTGAGE ASSOCIATION AND
THE FEDERAL HOME LOAN MORTGAGE CORPORATION,

*Plaintiff-Appellee*,

v.

UBS AMERICAS INC., UBS REAL ESTATE SECURITIES INC.,
UBS SECURITIES, LLC, MORTGAGE ASSET SECURITIZATION
TRANSACTIONS, INC., DAVID MARTIN,
PER DYRVIK, HUGH CORCORAN, AND PETER SLAGOWITZ,

*Defendants-Appellants*.

———————————

Before:
CHIN AND LOHIER, *Circuit Judges*,
AND GARDEPHE, *District Judge*.[*]

———————————

[*]    The Honorable Paul G. Gardephe, United States District
Judge for the Southern District of New York, sitting by
designation.

Appeal from an interlocutory order of the United States District Court for the Southern District of New York (Denise Cote, *J.*) denying in part defendants-appellants' motion to dismiss the second amended complaint brought by plaintiff-appellee Federal Housing Finance Agency as conservator of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation. The district court rejected defendants-appellants' arguments that the action was untimely and that FHFA lacked standing to bring this suit.

AFFIRMED.

---

KATHLEEN M. SULLIVAN (Philippe Z. Selendy, Christine H. Chung, Adam M. Abensohn, William B. Adams, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, *for Plaintiff-Appellee*.

JAY B. KASNER (Scott D. Musoff, Joseph N. Sacca, Robert A. Fumerton, Alexander C. Drylewski, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, *for Defendants-Appellants*.

DANIEL TENNY (Mark B. Stern and Thomas M. Bondy, *on the brief*), *for* Stuart F. Delery, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., *and* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Amicus Curiae United States*.

Michael J. Dell and Aaron M. Frankel, Kramer Levin Naftalis & Frankel LLP, New York, New York, and Ira D. Hammerman and Kevin Carroll, Washington, D.C., *for Amicus Curiae Securities Industry and Financial Markets Association*.

Richard W. Painter (Mary-Christine Sungaila, Snell & Wilmer L.L.P., Costa Mesa, California, *on the brief)*, University of Minnesota Law School, Minneapolis, Minnesota, *for Amicus Curiae Professor Richard W. Painter*.

Michael O. Ware, Catherine A. Bernard, and Mark G. Hanchet, Mayer Brown LLP, New York, New York, and Washington, D.C.; Matthew Solum, Robert J. Kopecky, and Devon M. Largio, Kirkland & Ellis LLP, New York, New York, and Chicago, Illinois; David Blatt and John McNichols, Williams & Connolly LLP, Washington, D.C.; David H. Braff, Brian T. Frawley, Jeffrey T. Scott, Joshua Fritsch, Bruce Clark, Amanda

-3-

F. Davidoff, Richard H. Klapper, Theodore Edelman, Michael T. Tomaino, Jr., Tracy Richelle High, Penny Shane, Sharon L. Nelles, and Jonathan M. Sedlak, Sullivan & Cromwell LLP, New York, New York, and Washington, D.C.; Brad S. Karp, Bruce Birenboim, and Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York; Richard W. Clary and Michael T. Reynolds, Cravath, Swaine & Moore LLP, New York, New York; Thomas C. Rice, David J. Woll, and Alan Turner, Simpson Thacher & Bartlett LLP, New York, New York; Greg A. Danilow and Vernon Broderick, Weil, Gotshal, & Manges LLP, New York, New York; and James P. Rouhandeh, Brian S. Weinstein, Daniel J. Schwartz, Nicholas N. George, and Jane M. Morril, Davis Polk & Wardwell LLP, New York, New York; *for Amici Curiae Related-Case Financial Institution Defendants.*

---

CHIN, *Circuit Judge*:

In this case, the Federal Housing Finance Agency ("FHFA"), as conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), sued UBS Americas Inc., certain affiliated entities, and several officers

-4-

(collectively, "UBS") for fraud and misrepresentation in connection with the marketing and sale of mortgage-backed securities.  FHFA has filed some seventeen other similar actions against other financial institutions involved in the mortgage-backed securities industry.

In the district court, UBS moved to dismiss on the grounds, *inter alia*, that (1) the action was untimely and (2) FHFA lacked standing to bring suit.  The district court (Cote, *J.*) denied these prongs of the motion, and certified its decision for interlocutory appeal.  We granted UBS's petition for leave to bring this interlocutory appeal.  We now affirm.

### *Statement of the Case*

**A.  *Statutory Background***

In July 2008, in response to the national housing and economic crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA").  *See* Pub. L. No. 110-289, 122 Stat. 2654 (2008).  Congress enacted HERA because it was concerned about the financial condition of Fannie Mae, Freddie Mac, and other government-sponsored

entities ("GSEs").  Hence, Congress created FHFA as an

"independent agency of the Federal Government," 12 U.S.C.

§ 4511(a), and conferred upon FHFA broad power to appoint

itself conservator or receiver of the GSEs, *id.* § 4617(a),

and to "take such action as may be . . . necessary to put

the [GSEs] in a sound and solvent condition; and . . .

appropriate to carry on the business of the [GSEs] and

preserve and conserve [their] assets and property," *id.*

§ 4617(b)(2)(D).  Congress specifically authorized FHFA, as

conservator or receiver, to "collect all obligations and

money due the [GSEs]."  *Id.* § 4617(b)(2)(B)(ii).

HERA set forth provisions governing the

limitations period for actions brought by FHFA as

conservator or receiver.  Section 4617(b)(12) of HERA (the

"extender statute") provides:

> (A)  In General
>
> Notwithstanding any provision of any
> contract, the applicable statute of
> limitations with regard to any action
> brought by the Agency as conservator or
> receiver shall be --

> (i) in the case of any contract claim, the longer of --
>
>> (I) the 6-year period beginning on the date on which the claim accrues; or
>>
>> (II) the period applicable under State law; and
>
> (ii) in the case of any tort claim, the longer of --
>
>> (I) the 3-year period beginning on the date on which the claim accrues; or
>>
>> (II) the period applicable under State law.
>
> (B) Determination of the date on which a claim accrues
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of --
>
> (i) the date of the appointment of the Agency as conservator or receiver; or
>
> (ii) the date on which the cause of action accrues.

12 U.S.C. § 4617(b)(12).

On July 30, 2008, as HERA was signed into law, Congress appointed James B. Lockhart III Acting Director of FHFA. Lockhart had previously been nominated by President Bush and confirmed by the Senate as Director of the Office of Federal Housing Enterprise Oversight ("OFHEO") of the U.S. Department of Housing and Urban Development. On August 25, 2009, after Lockhart resigned his position from FHFA, President Obama designated Edward DeMarco -- who was then Deputy Director of FHFA -- as its Acting Director, effective September 1, 2009.

**B.    *The Facts***

As relevant to this appeal, the allegations of the second amended complaint are assumed to be true and may be summarized as follows:

From September 2005 through August 2007, Fannie Mae and Freddie Mac purchased $6.4 billion in residential mortgage-backed securities sponsored or underwritten by UBS. They did so in reliance on certain false and misleading statements contained in the offering documents. In particular, UBS represented to potential investors that the

mortgage loans serving as collateral for the securitizations were underwritten in accordance with established guidelines to ensure that borrowers could meet their payment obligations, and UBS provided statistical material relating to the likelihood that underlying mortgage loans would be repaid. These representations were false. As a consequence of their reliance on these representations, Fannie Mae and Freddie Mac sustained massive losses.

Acting Director Lockhart appointed FHFA conservator of Fannie Mae and Freddie Mac on September 6, 2008.

## C. *The Proceedings Below*

On July 27, 2011, more than three years after the last of the securities offerings in question but within three years of FHFA's appointment as conservator, FHFA commenced this action below. It did so at the direction of Acting Director DeMarco.

On September 2, 2011, FHFA filed some seventeen other similar actions against other financial institutions. Sixteen of these actions were assigned to Judge Cote in the

Southern District of New York as related to this case, but one was subsequently transferred to the Central District of California. The seventeenth case was filed in the District of Connecticut.

The second amended complaint asserted claims under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77*o*; the Virginia Securities Act, Va. Code Ann. § 13.1-522(A)(ii); and the District of Columbia Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (C). The second amended complaint also asserted a common law claim for negligent misrepresentation. Defendants moved to dismiss, contending, *inter alia*, that the securities claims were time-barred, FHFA had no standing to pursue the action because its Director had not been constitutionally appointed, and the negligent misrepresentation claim failed to state a claim upon which relief could be granted.

On May 4, 2012, in a thorough and carefully considered opinion and order, the district court denied the motion to dismiss with respect to the statutory claims and

granted it only with respect to the negligent misrepresentation claim.  *See FHFA v. UBS Americas, Inc.*, 858 F. Supp. 2d 306 (S.D.N.Y. 2012).  By order entered June 19, 2012, the district court certified an interlocutory appeal from its May 4th opinion and order.  On August 14, 2012, we granted UBS's petition for interlocutory appeal.

### *DISCUSSION*

On this appeal from the district court's ruling on a motion to dismiss, we review the district court's legal conclusions *de novo*, accepting the factual allegations of the second amended complaint as true.  *See Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 203 (2d Cir. 2012).

Two issues are presented:  first, the timeliness of this action, and, second, FHFA's standing to bring this suit.

### A.    *Timeliness*

The principal question is whether FHFA's claims under the Securities Act and the Virginia and D.C. Blue Sky laws are governed by HERA's extender statute, including, in particular, the provision extending the "statute of

-11-

limitations" for tort claims to the three-year period after the appointment of FHFA as conservator or receiver.  12 U.S.C. § 4617(b)(12).  UBS argues that HERA's extender statute applies only to "statutes of limitations" and not to "statutes of repose"; the Securities Act and the Virginia and D.C. Blue Sky laws are governed by "statutes of repose," which are separate and distinct from "statutes of limitations"; and the applicable "statutes of repose" all expired prior to the commencement of suit in the district court.

   1.  *Applicable Law*

      "Statutes of repose and statutes of limitations are often confused, though they are distinct."  *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010).  Statutes of limitations limit the availability of remedies and, accordingly, may be subject to equitable considerations, such as tolling, or a discovery rule.  *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).  In contrast, statutes of repose affect the underlying right, not just the remedy, and thus they

"run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *Id.* at 102-03. In fact, a statute of repose may bar a claim even before the plaintiff suffers injury, leaving her without any remedy. *See id.* at 103; *accord Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998).

As UBS correctly notes, we have characterized the three-year statute of limitations in § 13 of the Securities Act as a "statute of repose." *P. Stolz*, 355 F.3d at 96; *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360 & n.5, 362 (1991) (referring to "3-year period of repose" in Securities Act and 1934 Exchange Act).[1] UBS also argues, and we assume without deciding the

---

[1] Titled "Limitation of Actions," § 13 of the Securities Act provides:

> No action shall be maintained to enforce any liability created under section 77k [§ 11] or 77*l*(a)(2) [§ 12(a)(2)] of this title unless brought within one year after the discovery

question, that the limitations provisions of the Virginia and D.C. Blue Sky laws are also statutes of repose. The question thus is whether the words "the applicable statute of limitations" in § 4617(b)(12) of HERA refer only to "statutes of limitations" and not to "statutes of repose."

In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning. *See Schindler Elevator Corp. v. United States ex rel. Kirk,* 131 S. Ct. 1885, 1891 (2011); *United States v. Desposito,* 704 F.3d 221, 226 (2d Cir. 2013); *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 182 (2d Cir. 2012). Absent ambiguity, our analysis also ends with the statutory language. *See Schindler Elevator Corp.,* 131 S. Ct. at 1893; *Devine v. United States*, 202 F.3d 547, 551 (2d

---

of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . . *In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.*

15 U.S.C. § 77m (emphasis added).

Cir. 2000).  "[W]e must presume that the statute says what it means."  *Devine*, 202 F.3d at 551.  In interpreting a statute, however, courts are not to "construe each phrase literally or in isolation."  *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009).  We must "attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole."  *Id.*  If we conclude that the text is ambiguous, we will look to legislative history and other tools of statutory interpretation.  *See Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 143-44 (2d Cir. 2002).

## 2.  *Application*

We hold that § 4617(b)(12) of HERA applies to this action, and thus we conclude that the district court correctly denied UBS's motion to dismiss.  We discuss in turn the text of the statute, its legislative history, and UBS's argument that the reference to "statutes of limitations" excludes "statutes of repose."

### a.  *The Statutory Text*

The words of the statute make clear that HERA applies to the claims brought by FHFA in this case.  Section

4617(b)(12) sets forth "*the* applicable statute of limitations with regard to *any* action brought by [FHFA] as conservator or receiver." 12 U.S.C. § 4617(b)(12)(A) (emphasis added). It provides that the limitations period "*shall be*" six years for contract cases, three years for tort cases, or in either case the respective applicable period under state law if that period is longer. *Id.* § 4617(b)(12)(A)(i), (ii) (emphasis added). It further provides that "the date on which the statute of limitations begins to run" is the later of (i) the date FHFA is appointed conservator or receiver or (ii) the date the cause of action accrues. *Id.* § 4617(b)(12)(B)(i), (ii).

By explicitly stating that "*the*" statute of limitations for "*any action*" brought by FHFA as conservator "*shall be*" as specified in § 4617(b)(12), Congress clearly provided that the extender statute shall apply to an action such as this one -- an action brought by FHFA, as conservator, to recover "obligations and money" due Fannie Mae and Freddie Mac. *Id.* § 4617(b)(2)(B)(ii). By using these words, Congress precluded the possibility that some

other limitations period might apply to claims brought by FHFA as conservator. Giving the words of § 4617(b)(12) their plain meaning, and considering the provision as a whole, we conclude that a reasonable reader could only understand it to apply to both the federal and state claims in this case.

### b. *The Legislative History*

To the extent there is any ambiguity in the words of the extender statute, the legislative history eliminates any doubt. Congress enacted HERA and created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of Fannie Mae and Freddie Mac. As HERA makes clear, Congress intended FHFA to take action to "collect all obligations and money due" to the GSEs, to restore them to a "sound and solvent condition." 12 U.S.C. § 4617(b)(2)(B)(ii), (D).

Congress obviously realized that it would take time for this new agency to mobilize and to consider whether it wished to bring any claims and, if so, where and how to do so. Congress enacted HERA's extender statute to give

-17-

FHFA the time to investigate and develop potential claims on behalf of the GSEs -- and thus it provided for a period of at least three years from the commencement of a conservatorship to bring suit.[2]

Of course, the collapse of the mortgage-backed securities market was a major cause of the GSEs' financial predicament, and it must have been evident to Congress when it was enacting HERA that FHFA would have to consider potential claims under the federal securities and state Blue

_____

[2]    Congress drew the language of § 4617(b)(12) from similar provisions in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(14), and the Federal Credit Union Act, 12 U.S.C. § 1787(b)(14).  In construing the limitations provision in FIRREA, the Fifth Circuit recognized that its purpose was to give the agency in question, the Resolution Trust Corporation (the "RTC"), "three years from the date upon which it is appointed receiver to decide whether to bring any causes of action held by a failed savings and loan.  This three-year period allows the RTC to investigate and determine what causes of action it should bring on behalf of a failed institution." *FDIC v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996).  In drawing on FIRREA's language, Congress intended for § 4617(b)(12) of HERA to serve a similar purpose with respect to FHFA. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, __ F. Supp. 2d __, Nos. 2:11-ML-02265, 2:12-CV-1059 MRP, 2012 WL 5275327, at *9 (C.D. Cal. Oct. 18, 2012) ("The apparent purpose of the extender statute was to grant FHFA 'more time to decide whether and how to pursue any claims it inherited as Fannie Mae's newly-appointed conservator,' in order to 'put the regulated entit[ies] in a sound and solvent condition.'" (quoting *FHFA v. UBS Americas*, *Inc.*, 858 F. Supp. 2d 306, 316 (S.D.N.Y. 2012))).

-18-

Sky laws.  It would have made no sense for Congress to have

carved out securities claims from the ambit of the extender

statute, as doing so would have undermined Congress's intent

to restore Fannie Mae and Freddie Mac to financial

stability.

      **c.**     ***Statutes of Limitations***
              ***and Statutes of Repose***

We turn, then, to UBS's argument that

§ 4617(b)(12)'s use of the phrase "statute of limitations"

means it does not apply to "statutes of repose" such as

those contained in the Securities Act and the Virginia and

D.C. Blue Sky laws.  The argument fails.

Although statutes of limitations and statutes of

repose are distinct in theory, the courts -- including the

Supreme Court and this Court -- have long used the term

"statute of limitations" to refer to statutes of repose,

including specifically with respect to § 13 of the

Securities Act.[3]  Similarly, when Congress extended the

--------

[3]    *See, e.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976) ("Section 13 specifies a *statute of limitations* of one year from the time the violation was or should have been discovered, in no event to exceed three years from the time of

limitations periods for securities fraud actions in the Sarbanes-Oxley Act of 2002, it did so in a section entitled "Statutes of Limitations for Securities Fraud," Sarbanes-Oxley Act of 2002, § 804, Pub. L. No. 107-204, 116 Stat. 745, 801 (codified at 28 U.S.C. § 1658(b)), even though securities claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 were governed by both a one-year statute of limitations and a three-year statute of repose similar to those in § 13 of the Securities Act.  *See Lampf, Pleva, Lipkind, Prupis & Petigrow,* 501 U.S. at 364 & n.9; *P. Stolz*, 355 F.3d at 104 (noting that Sarbanes-Oxley "extend[ed] the effective date of the *statute of repose* from three years to five years" (emphasis added)).  In other contexts as well, Congress has enacted statutes that use the

---

offer or sale . . . ."(emphasis added)); *In re WorldCom Sec. Litig.*, 496 F.3d 245, 250 (2d Cir. 2007) (referring to "the Securities Act's one- and three-year *statutes of limitations*" (emphasis added)); *In re Ames Dep't Stores, Inc. Note Litig.*, 991 F.2d 968, 979 (2d Cir. 1993) ("The *statute of limitations* for claims under §§ 11 and 12(2) of the Securities Act is set forth in § 13 . . . ." (emphasis added)); *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (referring to "the two tiered § 13 *statute of limitations*" (emphasis added)); *see also Countrywide,* 2012 WL 5275327, at *6 (collecting cases); *UBS Americas,* 858 F. Supp. 2d at 315 (collecting cases).

term "statute of limitations" when referring to statutes of repose.[4]

In view of the text of the statute and its legislative history as discussed above, it is clear that Congress intended one statute of limitations -- § 4617(b)(12) of HERA -- to apply to *all* claims brought by FHFA as conservator. If Congress had really wanted to exclude securities claims from the ambit of HERA's extender statute, it surely would have done so clearly and explicitly instead of by opaquely using the phrase "statute of limitations" rather than the words "statute of repose." It would not have elected to use language that "*the* applicable statute of limitations with regard to *any* action brought by [FHFA] as conservator or receiver *shall be*" as set forth in the extender statute. 12 U.S.C. § 4617(b)(12) (emphasis added). As the district court held below:

---

[4] *See Countrywide*, 2012 WL 5275327, at *5 ("Congressional statutes continue to use the term 'statutes of limitations' to encompass statutes of repose . . . . The United States Code is littered with statutory provisions entitled 'statute of limitations,' 'time limits,' 'time limitations' and 'limitations of actions,' that regulate both when plaintiffs can bring a claim after discovery of their rights and when plaintiffs are absolutely barred from bringing a claim." (citations omitted)).

> The more natural reading of the
> provision, the one that is both inline
> with everyday usage and consistent with
> the objectives of the statute overall, is
> that by including in HERA a provision
> explicitly setting out the "statute[s] of
> limitations" applicable to claims by
> FHFA, Congress intended to prescribe
> *comprehensive* time limitations for "*any
> action*" that the Agency might bring as
> conservator, including claims to which a
> statute of repose generally attaches.

*UBS Americas*, 858 F. Supp. 2d at 316-17.

Accordingly, we hold that § 4617(b)(12) of HERA applies to this action and supplants any other time limitations that otherwise might have applied. As FHFA commenced suit within three years after it was appointed conservator of Freddie Mac and Fannie Mae, the action was timely. The district court correctly denied this prong of UBS's motion to dismiss.

**B.** *Standing*

UBS argues that FHFA lacks standing to prosecute this action because the appointments of Lockhart and DeMarco as Acting Directors of FHFA were unconstitutional as: (1) Lockhart was appointed by Congress without being

nominated by the President and (2) DeMarco was appointed by the President without Senate confirmation.[5]  Both arguments fail.

First, Lockhart had been earlier nominated by the President and confirmed by the Senate to serve as Director of OFHEO.  As the district court correctly held, "Congress may confer on validly appointed officers 'additional duties, germane to the offices already held by them . . . without thereby rendering it necessary that the incumbent should be again nominated and appointed.'"  *UBS Americas*, 858 F. Supp. 2d at 322 (quoting *Shoemaker v. United States*, 147 U.S. 282, 301 (1893)); *accord Weiss v. United States*, 510 U.S. 163, 171-75 (1994) (holding that second appointment in accordance with Appointments Clause was not necessary for military judges, who are "Officers" who must be appointed in accordance with Appointments Clause of Constitution, where they were commissioned officers who had already been

_____

[5]   The Appointments Clause grants the President the power to "nominate, and by and with the Advice and Consent of the Senate, . . . appoint . . . Officers of the United States."  U.S. Const. art. II, § 2.

-23-

appointed by the President with advice and consent of the Senate). Here, the functions assigned to Lockhart by Congress as Acting Director of FHFA were "germane" to the functions he had previously served as Director of OFHEO, as Congress essentially converted OFHEO into FHFA and transferred OFHEO's functions to FHFA. *See* 12 U.S.C. §§ 4511 note, 4512(b)(5); *UBS Americas*, 858 F. Supp. 2d at 322; *see also Lo Duca v. United States*, 93 F.3d 1100, 1110 (2d Cir. 1996) ("Where Congress provides additional duties that are 'germane' to an already existing position, the Appointments Clause does not require a second appointment."). Indeed, the OFHEO Director already had the power to place Fannie Mae and Freddie Mac into conservatorship. *See* Federal Housing Enterprises Financial Safety and Soundness Act of 1992, §§ 1303(6), 1313(b)(4), 1367, 1369, Pub. L. No. 102-550, tit. XIII, 106 Stat. 3941. Hence, Lockhart's appointment as Acting Director of FHFA did not run afoul of the Appointments Clause.

Second, after Lockhart resigned, DeMarco was properly designated by the President as Acting Director of

FHFA, as HERA provides that "[i]n the event of the death, resignation, sickness, or absence of the Director, the President shall designate [one of three enumerated Deputy Directors] to serve as acting Director until the return of the Director, or the appointment of a successor . . . ." 12 U.S.C. § 4512(f). Because Lockhart was legally the Director, the President was authorized to appoint Deputy Director DeMarco as Acting Director upon Lockhart's resignation.

Accordingly, FHFA had standing to bring this action.

### *CONCLUSION*

For the reasons set forth above, the order of the district court denying UBS's motion to dismiss for untimeliness and lack of standing is AFFIRMED.