Judge PARKER dissents in a separate opinion.
GERARD E. LYNCH, Circuit Judge:
Plaintiff-Appellant Federal Deposit Insurance Corporation (“FDIC”) brought this action under the Securities Act of 1933 as receiver for Colonial Bank (“Colonial”). Because the complaint was filed less than three years after the FDIC was appointed receiver, it was timely under the terms of *374 the FDIC Extender Statute, which provides “the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver.” 12 U.S.C. § 1821(d)(14)(A). But because the complaint was, filed more than three, years after the securities, at issue were offered to the public, it would be untimely under the terms of the Securities Act’s statute of repose,. 15 U.S.C. § 77m. Although they recognize that the FDIC Extender Statute displaces otherwise applicable statutes of limitations, the defendants argue that it does not displace the Securities Act’s statute of repose, and that the complaint should be dismissed as untimely.
We do not consider this argument on a blank slate. In Federal Housing Finance Agency v. UBS Americas Inc., 712 F.3d 136 (2d Cir.2013), we held that a materially identical extender statute for actions brought by the Federal Housing Finance Authority (“FHFA”) did displace the Securities Act’s statute of repose. The defendants do not argue that the FDIC Extender Statute is in any way distinguishable from the one at issue in UBS; rather, they assert that our UBS holding was, abrogated by the subsequent Supreme Court decision in CTS Corp. v. Waldburger, — U.S. -, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), which construed yet another, somewhat different federal limitations-extending .provision— 42 U.S.C. § 9658, enacted as an amendment to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”) — to preempt only state statutes of limitations, and not state statutes of repose. The district court agreed, and dismissed the complaint. We conclude, to the contrary, that ■ UBS remains good law and that, under UBS, the FDIC’s complaint was timely. Accordingly, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.
BACKGROUND
Between June 5 and October 19, 2007, Colonial; a federally insured bank headquartered in Montgomery, Alabama, invested approximately $300 million in nine residential mortgage-backed ' securities (“RMBS”) issued or underwritten by the defendants. ■ In a now-familiar turn of events, Coloniál suffered heavy losses on those RMBS, and on August 14, 2009, the Alabama State Banking Department closed Colonial and appointed the FDIC as receiver.
On August 10, 2012 — within three years of its appointment as receiver, but more than.three years after the RMBS had been offered to the public — the FDIC brought this action in the Southern District of New York, asserting claims under §§ 11 and 15 of the Securities Act, which render several classes of persons liable for material,misstatements or omissions in securities registration statements.' 15 U.S.C. §§ 77k, 77o. Specifically, the complaint alleges that prospectus supplements for the RMBS at issue misrepresented the loan-to-value ratios of the mortgage loans backing the RMBS, the occupancy status of the properties that secured the mortgage loans, and the underwriting standards used to originate those loans.
r The defendants moved, to dismiss the complaint on several grounds, including that it was barred by the Securities Act’s statute of repose, which, the defendants argued, was not displaced by the FDIC Extendér Statute.' While that motion was pending,"this Court decided UBS. One of the issues in that case, which was brought by the FHFA -and also involved claims under §§ 11 and 15 of the Securities Act, was whether' those claims’ timeliness was governed by the Securities Act’s statute of *375 repose or by the FHFA Extender Statute, 12 U.S.C. § 4617(b)(12). Examining the text and legislative history of the FHFA Extender Statute, we concluded that Congress intended for it to supplant “any other time limitations that otherwise might have applied.” UBS, 712 F.3d at 143-44. We emphasized that the statute by its terms established “the applicable statute !of limitations with regard to any action brought by [FHFA] as conservator or receiver.” Id. at 141, quoting 12 U.S.C! § 4617(b)(12)(A) (emphasis and alteration in UBS). And we rejected the argument that the Extender Statute’s use of the term “statute of limitations ” meant that it left in-place otherwise applicable statutes of repose, observing -that Congress frequently uses the term “statute of limitations” to refer to what might more precisely be designated as statutes of repose. Id. at 143.
The FHFA Extender Statute was modeled on, and is materially identical to, the FDIC Extender Statute.[1] Recognizing that UBS controlled, the defendants in this case withdrew their Securities Act statute of repose argument (reserving the right to reassert it at a later date), and the district court (Louis L. Stanton, J.) denied the rest of the motion to dismiss.
The following year, the Supreme Court decided CTS, in which the plaintiffs alleged injury and damage from contaminants on land on which the defendant had previously operated an electronics plant. The plaintiffs argued that their claims were timely under § 9658, the CERCLA amendment, which creates an “[exception” to state statutes of limitations for state-law toxic tort actions. 42 U.S.C. § 9658(a)(1). The Supreme Court, however, held that CERCLA preempted state statutes of limitations but left state statutes of repose in place, and ¡that the applicable statute of repose barred the action. CTS, 134 S.Ct. at 2180. It chided the 'court below, which had come to the opposite conclusion, for using “the proposition that remedial statutes should be interpreted in. a liberal manner”, as a “substitute for a conclusion grounded in .the statute’s-text and structure.” Id. at 2185.
Armed with the CTS decision, the defendants here reasserted their argument that this action is barred by the Securities Act’s statute of repose, in a motion for judgment on the pleadings under Fed.R.Civ.P. l¿(c). They claimed that UBS was- inconsistent with CTS, because it failed to give weight to the textual markers that the CTS Court found instructive in its analysis of § 9658, and instead put too much emphasis on the FDIC Extender Statute’s remedial purpose. The district court agreed, holding that, after CTS, the FDIC .Extender Statute could not be read to displace the Securities Act’s statute of repose. Accordingly, it granted judgment ih favor of the defendants. The FDIC timely appealed.
DISCUSSION
“In general, a panel of this Court is bound by the decisions of prior panels until such time as they..are overruled either by an en banc panel of our Court or by the Supreme Court.” Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 405 (2d Cir.2014) (internal quotation marks omitted). The defendants make no-attempt to distinguish the FDIC Extender Statute from the FHFA Extender Statute at issue in UBS. Consequently, the outcome here is controlled by UBS, unless the defendants can show that its “rationale [was] overruled, implicitly or expressly, by the Supreme Court” in CTS. United States v. *376 Ianniello, 808 F.2d 184, 190 (2d Cir.1986), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989).[2] For the following reasons, the defendants have not made that showing.
CTS held that § 9658, although it preempted state-law statutes of limitations, left in place applicable state-law statutes of repose. Significantly, however, CTS did not hold that a federal statute extending “statutes of limitations” must always be read to leave in place existing statutes of repose. Instead, the Supreme Court explained that § 9658’s use of the term “statute of limitations” “is instructive, but it is not dispositive.” CTS, 134 S.Ct. at 2185. The Court acknowledged that “Congress has used the term ‘statute of limitations’ when enacting statutes of repose,” id., citing 15 U.S.C. § 78u-6(h)(l)(B)(iii)(I)(aa) and 42 U.S.C. § 2278, and that only a few years before § 9658 was enacted, one scholar “described multiple usages of the terms, including both a usage in which the terms are equivalent and also the modern, more precise usage.” Id. at 2186, citing Francis E. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am. U. L. Rev. 579, 584 (1981). Accordingly, CTS instructs, a court must consider “other features of the statutory text,” id., before determining whether a statute displaces otherwise applicable statutes of repose.
Nor did the CTS opinion purport to lay out a novel framework for analyzing that question, which might cast doubt on the validity of the analysis used in UBS.[3] Instead, the Supreme Court reiterated the uncontroversial principle that “[congressional intent is discerned primarily from the statutory text.” Id. at 2185. While it did state that “invoking the proposition that remedial statutes should be interpreted in a liberal manner” was no “substitute for a conclusion grounded in the statute’s text and structure,” id., it did not direct courts never to use that canon as an interpretative aid. Nor did it rule out resort to legislative history in interpreting federal statutes that alter existing statutes of limitations. In fact, CTS itself relied on § 9658’s legislative history, citing a report that was before Congress at the time § 9658 was enacted that explicitly noted the distinction between statutes of limita *377 tions and statutes of repose. Id. at 2186. The defendants have pointed us to no materials making the same distinction in the FDIC Extender Statute’s legislative history.
Indeed, it is precisely because CTS’s holding is firmly rooted in a close analysis of § 9658’s text, structure, and legislative history that it has limited bearing on this case. Although they both have the effect of extending the time to file certain types of claims, the FDIC Extender Statute and § 9658 are structured and worded in fundamentally different ways. Section 9658 reads, in relevant part:
(a) State statutes of limitations for hazardous substance cases
(1) Exception to State statutes
In the case of any [toxic tort] action brought under State law ...', if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which- is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
(2) State law generally applicable Except as provided in paragraph (1), the statute' of limitations established under State law shall apply in all [toxic tort] actions brought under State law —
(b) Definitions
As used in this section—
(2) Applicable limitations period
The term “applicable limitations period” means the period specified in a statute of limitations during, which a civil action referred to in subsection
(a)(1) of ■ 12 this section may be brought. ■
(3) Commencement date
The term “commencement date” means the date specified in a statute of limitations as the beginning of the applicable limitations period.
(4) Federally required commencement date
(A) In general
Except as provided in subparagraph -(B), the term “federally required commencement date” means the date the plaintiff knew (or reasonably should have known) that the personal "injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.
(B) Special rules
In the case of a minor or incompetent plaintiff, the term “federally required commencement date” means the later of the date referred to in subparagraph (A) or the following:
(i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed, '
(ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.
42 U.S.C. § 9658. Section 9658 does not purport to create an entirely new statute of. limitations framework for state toxic tort, actions; instead, it provides a limited “[e]xception • to.., State . statutes,” id. § 9658(a)(1), which otherwise remain “gen *378 erally applicable.” Id. § 9658(a)(2); see also CTS, 134 S.Ct. at 2185 (“Under this structure, state law is not pre-empted unless it fits into' the precise terms .of the exception.”). The exception applies only if the state statute “provides a commencement date which is earlier than the federally required commencement date,” 42 U.S.C. § 9658(a)(1), which is defined as “the date the plaintiff knew (or reasonably should have known)” that the injury complained of was “caused or contributed to by the hazardous substance or pollutant or contaminant concerned.” ■ Id. § 9658(b)(4)(A). Thus, § 9658’s “exception” does not change the length of the applicable limitation^ period; it simply modifies the time at which the limitations period begins to run, requiring states that do not already do so to apply,the “discovery rule.” ,
By contrast, the Extender Statute establishes “the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver.” 12 U.S.C. § 1821(d)(14)(A). That limitations period (six years for “any contract claim” and three years for “any tort claim”) applies unless “the period applicable under State law” is longer. Id. And the Extender Statute further provides that
the date on which the statute of limitations begins to run on any cláim described in [the previous] subparagraph shall be the later of—
(i) the date of the appointment of the [FDIC] as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14)(B).[4] Rather than creating a limited exception, the Extender Statute thus establishes, for “any” action brought by the FDIC as conservator or receiver, the length of the limitations period, as well as the time at which the period .begins to run. As we concluded in UBS, this structure suggests that Congress intended the Extender Statute to supersede any' and all other time limitations, including statutes of repose.
Because of the differences in the statutes, much of CTS’s reasoning is simply inapplicable to the Extender Statute. For instance, the CTS Court relied on §' 9658’s definition of “applicable limitations period” to mean “the period ..'. during which a civil action ... may be brought.” 42 U.S.C. § 9658(b)(2). It explained that, technically speaking, only statutes of limitations “limit the ■ time in which a civil action ‘máy be brought,’ ” whereas statutes of repose “can prohibit a cause of action from coming ¡into existence’* in the first place. CTS, 134 S.Ct. at 2187. The Extender Statute, however, contains no such definition of “applicable limitations period.” Similarly, the CTS Court observed that § 9658 includes an equitable tolling provision for minors and incompetents, 42 U.S.C. § 9658(b)(4)(B), a feature that is typical of statutes of limitations but not of statutes of repose. CTS, 134 S.Ct. at 2187-88. But there is no similar tolling provision in the Extender Statute.
The defendants and the dissent make much of the fact that the Extender Statute uses the term “statute of limitations” (rather than “statute of repose”), and uses it in the singular. In CTS, the Supreme *379 Court noted that § 9658 “includes language describing the covered period in the singular,” and observed: “This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes.” Id. at 2186-87. But first, as we have explained, the Extender Statute’s mere use of the term “statute of limitations” does not settle the issue. As counsel for the defendants conceded, at oral argument, Congress has never used the expression “statute of repose”'- in a statute codified in the United States Code. Indeed, the very statute of repose on which the defendants rely here is located in a section of the Code entitled “Limitation of actions.” See 15 U.S.C. § 77m.
Further, when § 9658 uses the term “statute of 'limitations,” and’similarly refers to “the applicable limitations period” in'the singular, it is describing the existing period that is modified by § 9658 and otherwise remains “generally applicable.” The Supreme Court thus took the use óf the singular as an indication that § 9658 was intended to modify only one limitations period per claim — the period provided by the statute of limitations — and' to leave in place the second period provided by the applicable statute of repose. By contrast, when the Extender Statute refers to “the applicable statute of limitations,” it is referring to the new limitations period that is created by the Extender Statute.[5] The fact that the Extender Statute purports to create only one limitations period — rather than a dual statute of limitations/statute of repose framework such as that which ordinarily governs Securities Act claims — does not, standing alone, tell us anything about the number of limitations periods it was intended to displace.
The defendants and the dissent also emphasize that the Extender Statute’s limitations period is tied to the concept of “accrual” of a claim. In CTS, the Supreme Court explained: “A statute of repose ... is -not related to the accrual pf any cause of action[, but instead] mandates. that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued.” Id. at 2187 (internal quotation marks and citation omitted). A statute of repose typically measures that cutoff point “from the date of the last culpable act or omission of the defendant.” Id. at 2182. The limitations period established by the Extender Statute, howevei4, runs from “the later of (i) the date of the appointment of the [FDIC] as conservator or receiver; or..(ii) the date on which the cause of action accrues.” 12 U.S.C. § 1821(d)(14)(B). But this tells us only that the Extender Statute is itself, a statute of limitations,, and not a statute of repose. Cf. Nat’l Credit Union Admin. Bd. v. Barclays Capital Inc., 785 F.3d 387, 395 & n. 2 (10th Cir.2015) (holding that the NCUA Extender Statute, is a statute of limitations that can be waived, and collecting cases so holding). It provides no guidance on the question whether the Extender' Statute displaces otherwise applicable statutes of repose — a question on which we must thus defer to our binding UBS precedent.[6]
*380 Finally, the defendants take aim at what they perceive to be UBS’s overreliance on the Extender Statute’s legislative history and remedial purpose. As noted above, the Supreme Court in CTS directed courts not to treat “the proposition that remedial statutes should be interpreted in a liberal manner ... as a substitute for a conclusion grounded in the statute’s text and structure.” CTS, 134 S.Ct. at 2185. The UBS opinion, however,' does no such thing. Rather, it begins with two paragraphs of textual analysis, which conclude that “[b]y using these words, Congress precluded the possibility that some other limitations period might apply to claims brought by FHFA as conservator.” UBS, 712 F.3d at 142. Only then does it turn to the legislative history, which, it considers relevant only “[t]o the extent there is any ambiguity in the words of the extender , statute.” Id. The UBS panel based its- holding on what it determined to be “[t]he more natural reading of the provision, the one that is both inline with everyday usage and consistent with the objectives of the statute overall.” Id. at 143, quoting Fed. Hous. Fin. Agency v. UBS Ams., Inc., 858 F.Supp.2d 306, 316-17 (S.D.N.Y.2012). It thus used the Extender Statute’s legislative history and purpose as a complement to textual analysis, not as a substitute. Accordingly, we perceive nothing in CTS that undercuts the UBS opinion’s analysis of the Extender Statute.[7]
We can dispose of the defendants’ other arguments, which are not based on the holding or reasoning of CTS, more briefly. The defendants assert, for instance, that the FDIC Extender Statute does not apply to claims under the Securities Act, and instead applies only to state-law contract and tort claims. The textual basis for this argument is that the Extender Statute sets out -limitations periods for “any contract claim” and “any tort claim,” without specifically- mentioning other types of claims or claims under federal law. 12 U.S.C. § 1821(d)(14)(A). In UBS, however, we squarely rejected that argument with respect to the FHFA Extender Statute, concluding that “a reasonable reader could only understand [that statute] to apply to both the federal and state claims in [that] case.” UBS, 712 F.3d at 142. We relied on Congress’s “explicit[ ] statement] that ‘the’ statute of limitations for ‘any action’ brought by FHFA as conservator .‘shall be’ as specified in [the Extender Statute].” Id. at 141, quoting 12 U.S.C. § 4617(b)(12) (emphases in UBS ). Because no issue was presented in CTS about the types of claims to which § 9658 applied, CTS has no relevance to that part of UBS’s holding.
Similarly, the defendants and the dissent argue that reading the Extender Statute to .displace the Securities Act’s statute of repose violates the presumption against repeals by implication, see Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir.2002) (acknowledging “the important *381 principle that repeals by implication are not favored”), contending that, under the FDIC’s position, the Extender Statute in effect repeals the statute of repose for a class of cases (those brought by the FDIC as conservator or receiver). The dissent further explains that the presumption takes on added importance when it applies to the Securities Act’s statute of repose, “a prominent and. conspicuous provision in this nation’s securities regulation regime” over the past eight decades. Dissent at 385. But the CTS opinion does not even mention the presumption, and the policy arguments raised by the dissent would have applied with equal force in UBS, which also dealt with the Securities Act’s statute of repose, but which nevertheless held it to be superseded by the Extender Statute. The presumption against repeals by implication thus does not provide us with any basis for holding that CTS undermines the authority of UBS.
CONCLUSION
The defendants have not identified any aspect of the Supreme Court’s decision in CTS that requires us to revisit-our UBS holding. Accordingly, that holding controls this case, and mandates the conclusion that the FDIC’s complaint was timely. The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

. A third materially identical extender statute governs actions brought by the National. Credit Union Administration ("NCUA”). 12 U.S.C. § 1787(b)(14).

. Thus, we need not determine whether we would reach the same result as the UBS panel did if we were not bound by that precedent. We note, however, that both federal Courts of Appeals that have addressed the issue since CTS have concluded, even in the absence of binding circuit precedent, that the Extender Statutes displace otherwise applicable statutes of repose. See FDIC v. RBS Secs. Inc., 798 F.3d 244 (5th Cir.2015) (holding that the FDIC Extender Statute preempts the Texas Securities Act’s statute of repose); Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc., 764 F.3d 1199 (10th Cir.2014) (holding that the NCUA Extender Statute dis: places the federal Securities Act’s statute of repose).

. The dissent suggests that the novel ingredient supplied by CTS is its "focus on the central distinction between statutes of limitations and statutes of repose." Dissent at 382 (internal quotation marks omitted). But the UBS court was fully aware of the import of that distinction. See UBS, 712 F.3d at 140 (explaining that the two types of statutes “are distinct,” that "statutes of repose affect the underlying right, not just the remedy,” and that "a statute of repose may bar a claim even before the plaintiff suffers injury, leaving her without any remedy”). Even before UBS, several of our cases drew the distinction, along much the same lines as CTS. See, e.g., Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n. 4 (2d Cir.2010); P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102-03 (2d Cir.2004); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir.1998). CIS's restatement of the differences between the two types of statute thus does not constitute a change in controlling precedent that would allow us to revisit UBS.

. In the most common scenario, this provision will operate literally to extend the time to file a claim that is not yet.time-barred. .The Extender Statute also addresses the situation iii which the otherwise-applicable limitations period has already caused a claim to expire before the FDIC’s appointment as receiver. In that situation, the Extender Statute operates to revive the claim, in a limited category of cases, see 12 U.S.C. § 1821 (d)( 14)(C)(ii), in which the limitations period had expired "not more than 5 years before the appointment of the [FDIC] as conservator or receiver,” id. § 1821(d)(14)(C)(i).

. Thus, we do not hold, as the dissent suggests, that "when Congress said ‘statute of limitations’ it also meant ‘státute of repose.’ ” Dissent at 383. For that reason, the dissent’s discussion of evidence that Congress knew, the difference between the two types of statutes when it enacted the Extender Statute is beside the point. See id. at 381-83. But we note that even on its own terms, the dissent’s argument is unpersuasive. Congress has continued to enact statutes of repose under the label "statute of limitations,” despite the fact that it has been aware of the distinction since at least the 1980s. See■ 15 U.S.C. § 78u-6(h)(l)(B)(iii)(I)(aa) & (II), enacted in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 922(a), 124 Stat. 1376, 1846.

. We thus disagree with the dissent that superficially similar "textual markers” in § 9658 and the Extender Statute require us to read the latter as the Supreme Court read the former, Dissent at 384. The dissent errs, in our view, by focusing on those markers in isolation, without- considering their place within the larger statutory structure. Instead, "we follow the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it.” Hibbs v. Winn, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (alteration and internal quotation marks omitted).

. As noted above, see note 2, our conclusion that CTS does not undermine the displacement of statutes of repose by the various Extender statutes is shared by both of the other Courts of Appeals that have considered • the question.