FDIC v. First Horizon Asset Securities, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: October 8, 2015     Decided: May 19, 2016)

Docket No. 14-3648-cv

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,

*Plaintiff-Appellant*,

— v. —

FIRST HORIZON ASSET SECURITIES, INC., FIRST HORIZON HOME LOAN CORPORATION, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., FTN FINANCIAL SECURITIES CORP., HSBC SECURITIES (USA) INC., RBS SECURITIES INC., UBS SECURITIES LLC, and WELLS FARGO ASSET SECURITIES CORPORATION,

*Defendants-Appellees*,

CHASE MORTGAGE FINANCE CORP., JP MORGAN CHASE & CO., JP MORGAN SECURITIES LLC, CITICORP MORTGAGE SECURITIES, INC., CITIMORTGAGE, INC., CITIGROUP GLOBAL MARKETS INC., ALLY SECURITIES LLC, and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

*Defendants.*

B e f o r e:

PARKER, LYNCH, and CARNEY, *Circuit Judges*.

_____

Plaintiff-Appellant Federal Deposit Insurance Corporation ("FDIC") appeals from a decision of the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge*) dismissing its complaint, which asserts claims under the Securities Act of 1933, as untimely.  The FDIC brought this action within the limitations period provided by the FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), but outside the Securities Act's three-year statute of repose.  In Federal Housing Finance Agency v. UBS Americas Inc., 712 F.3d 136 (2d Cir. 2013), we held that a materially identical extender statute for actions brought by the Federal Housing Finance Agency displaced the Securities Act's statute of repose.  We now further hold that the Supreme Court's decision in CTS Corp. v. Waldburger, 134 S. Ct. 2175 (2014), did not abrogate our holding in UBS, which remains good law.  Accordingly, the FDIC's complaint was timely.

VACATED AND REMANDED.

Judge Parker dissents in a separate opinion.

_____

JAMES SCOTT WATSON, Counsel (Colleen J. Boles, Assistant General Counsel, Kathryn R. Norcross, Senior Counsel, Jaclyn C. Taner, Counsel, *on the brief*), Federal Deposit Insurance Corporation, Arlington, Virginia, *for Plaintiff-Appellant*.

ROBERT J. GIUFFRA, JR. (Bruce E. Clark, David B. Tulchin, Amanda Flug Davidoff, Jeffrey B. Wall, *on the brief*), Sullivan & Cromwell LLP, New York, New York, *for Defendants-Appellees First Horizon Asset Securities, Inc., First Horizon Home Loan Corporation, FTN Financial Securities Corp., and UBS Securities, LLC.*

Richard W. Clary, Cravath, Swaine & Moore LLP, New York, New York, *for Defendant-Appellee Credit Suisse Securities (USA) LLC.*

Thomas C. Rice, Andrew T. Frankel, Simpson Thacher & Bartlett LLP, New York, New York, *for Defendants-Appellees Deutsche Bank Securities Inc. and RBS Securities Inc.*

Marc T.G. Dworsky, Munger, Tolles & Olson LLP, Los Angeles, California, *for Defendant-Appellee Wells Fargo Asset Securities Corporation.*

Michael O. Ware, Mayer Brown LLP, New York, New York, *for Defendant-Appellee HSBC Securities (USA) Inc.*

KATHLEEN M. SULLIVAN, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York (Philippe Z. Selendy, Adam M. Abensohn, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, David C. Frederick, Wan J. Kim, Gregory G. Rapawy, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, District of Columbia, *on the brief*), *for Amici Curiae Federal Housing Finance Agency and National Credit Union Administration Board in Support of Plaintiff-Appellant.*

Michael J. Dell, Kramer Levin Naftalis & Frankel LLP, New York, New York, Ira D. Hammerman, Kevin Carroll, Securities Industry and Financial Markets Association, Washington, District of Columbia, Thomas Pinder, American Bankers Association, Washington, District of Columbia, *for Amici Curiae Securities Industry and Financial Markets Association, The American Bankers Association, and The Clearing House LLC in Support of Appellees and Affirmance.*

William M. Jay, Goodwin Procter LLP, Washington, District of Columbia, Joshua M. Daniels, Goodwin Procter LLP, Boston, Massachusetts, *for Amicus Curiae The Business Roundtable in Support of Defendants-Appellees.*

3

———————

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant Federal Deposit Insurance Corporation ("FDIC")

brought this action under the Securities Act of 1933 as receiver for Colonial Bank

("Colonial").  Because the complaint was filed less than three years after the FDIC

was appointed receiver, it was timely under the terms of the FDIC Extender

Statute, which provides "the applicable statute of limitations with regard to any

action brought by the [FDIC] as conservator or receiver."  12 U.S.C.

§ 1821(d)(14)(A).  But because the complaint was filed more than three years after

the securities at issue were offered to the public, it would be untimely under the

terms of the Securities Act's statute of repose, 15 U.S.C. § 77m.  Although they

recognize that the FDIC Extender Statute displaces otherwise applicable statutes

of limitations, the defendants argue that it does not displace the Securities Act's

statute of repose, and that the complaint should be dismissed as untimely.

We do not consider this argument on a blank slate.  In Federal Housing

Finance Agency v. UBS Americas Inc., 712 F.3d 136 (2d Cir. 2013), we held that a

materially identical extender statute for actions brought by the Federal Housing

Finance Authority ("FHFA") *did* displace the Securities Act's statute of repose. The defendants do not argue that the FDIC Extender Statute is in any way distinguishable from the one at issue in UBS; rather, they assert that our UBS holding was abrogated by the subsequent Supreme Court decision in CTS Corp. v. Waldburger, 134 S. Ct. 2175 (2014), which construed yet another, somewhat different federal limitations-extending provision – 42 U.S.C. § 9658, enacted as an amendment to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") – to preempt only state statutes of limitations, and not state statutes of repose. The district court agreed, and dismissed the complaint. We conclude, to the contrary, that UBS remains good law and that, under UBS, the FDIC's complaint was timely. Accordingly, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

Between June 5 and October 19, 2007, Colonial, a federally insured bank headquartered in Montgomery, Alabama, invested approximately $300 million in nine residential mortgage-backed securities ("RMBS") issued or underwritten by the defendants. In a now-familiar turn of events, Colonial suffered heavy losses

5

on those RMBS, and on August 14, 2009, the Alabama State Banking Department closed Colonial and appointed the FDIC as receiver.

On August 10, 2012 – within three years of its appointment as receiver, but more than three years after the RMBS had been offered to the public – the FDIC brought this action in the Southern District of New York, asserting claims under §§ 11 and 15 of the Securities Act, which render several classes of persons liable for material misstatements or omissions in securities registration statements.  15 U.S.C. §§ 77k, 77o.  Specifically, the complaint alleges that prospectus supplements for the RMBS at issue misrepresented the loan-to-value ratios of the mortgage loans backing the RMBS, the occupancy status of the properties that secured the mortgage loans, and the underwriting standards used to originate those loans.

The defendants moved to dismiss the complaint on several grounds, including that it was barred by the Securities Act's statute of repose, which, the defendants argued, was not displaced by the FDIC Extender Statute.  While that motion was pending, this Court decided UBS.  One of the issues in that case, which was brought by the FHFA and also involved claims under §§ 11 and 15 of the Securities Act, was whether those claims' timeliness was governed by the

6

Securities Act's statute of repose or by the FHFA Extender Statute, 12 U.S.C. § 4617(b)(12). Examining the text and legislative history of the FHFA Extender Statute, we concluded that Congress intended for it to supplant "any other time limitations that otherwise might have applied." UBS, 712 F.3d at 143–44. We emphasized that the statute by its terms established "*the* applicable statute of limitations with regard to *any* action brought by [FHFA] as conservator or receiver." Id. at 141, quoting 12 U.S.C. § 4617(b)(12)(A) (emphasis and alteration in UBS). And we rejected the argument that the Extender Statute's use of the term "statute of *limitations*" meant that it left in place otherwise applicable statutes of *repose*, observing that Congress frequently uses the term "statute of limitations" to refer to what might more precisely be designated as statutes of repose. Id. at 143.

The FHFA Extender Statute was modeled on, and is materially identical to, the FDIC Extender Statute.[1] Recognizing that UBS controlled, the defendants in this case withdrew their Securities Act statute of repose argument (reserving the right to reassert it at a later date), and the district court (Louis L. Stanton, *J.*) denied the rest of the motion to dismiss.

---

[1] A third materially identical extender statute governs actions brought by the National Credit Union Administration ("NCUA"). 12 U.S.C. § 1787(b)(14).

The following year, the Supreme Court decided CTS, in which the plaintiffs alleged injury and damage from contaminants on land on which the defendant had previously operated an electronics plant. The plaintiffs argued that their claims were timely under § 9658, the CERCLA amendment, which creates an "[e]xception" to state statutes of limitations for state-law toxic tort actions. 42 U.S.C. § 9658(a)(1). The Supreme Court, however, held that CERCLA preempted state statutes of limitations but left state statutes of repose in place, and that the applicable statute of repose barred the action. CTS, 134 S. Ct. at 2180. It chided the court below, which had come to the opposite conclusion, for using "the proposition that remedial statutes should be interpreted in a liberal manner" as a "substitute for a conclusion grounded in the statute's text and structure." Id. at 2185.

Armed with the CTS decision, the defendants here reasserted their argument that this action is barred by the Securities Act's statute of repose, in a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). They claimed that UBS was inconsistent with CTS, because it failed to give weight to the textual markers that the CTS Court found instructive in its analysis of § 9658, and instead put too much emphasis on the FDIC Extender Statute's remedial purpose. The

8

district court agreed, holding that, after CTS, the FDIC Extender Statute could not be read to displace the Securities Act's statute of repose. Accordingly, it granted judgment in favor of the defendants. The FDIC timely appealed.

## DISCUSSION

"In general, a panel of this Court is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 405 (2d Cir. 2014) (internal quotation marks omitted). The defendants make no attempt to distinguish the FDIC Extender Statute from the FHFA Extender Statute at issue in UBS. Consequently, the outcome here is controlled by UBS, unless the defendants can show that its "rationale [was] overruled, implicitly or expressly, by the Supreme Court" in CTS. United States v. Ianniello, 808 F.2d 184, 190 (2d Cir. 1986), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989).[2] For the following reasons, the defendants have not

---

[2] Thus, we need not determine whether we would reach the same result as the UBS panel did if we were not bound by that precedent. We note, however, that both federal Courts of Appeals that have addressed the issue since CTS have concluded, even in the absence of binding circuit precedent, that the Extender Statutes displace otherwise applicable statutes of repose. See FDIC v. RBS Secs. Inc., 798 F.3d 244 (5th Cir. 2015) (holding that the FDIC Extender Statute preempts the Texas Securities Act's statute of repose); Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc., 764 F.3d 1199 (10th Cir. 2014) (holding that the NCUA Extender Statute displaces the federal Securities Act's statute of repose).

made that showing.

CTS held that § 9658, although it preempted state-law statutes of limitations, left in place applicable state-law statutes of repose. Significantly, however, CTS did *not* hold that a federal statute extending "statutes of limitations" must always be read to leave in place existing statutes of repose. Instead, the Supreme Court explained that § 9658's use of the term "statute of limitations" "is instructive, but it is not dispositive." CTS, 134 S. Ct. at 2185. The Court acknowledged that "Congress has used the term 'statute of limitations' when enacting statutes of repose," id., citing 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) and 42 U.S.C. § 2278, and that only a few years before § 9658 was enacted, one scholar "described multiple usages of the terms, including both a usage in which the terms are equivalent and also the modern, more precise usage." Id. at 2186, citing Francis E. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am. U. L. Rev. 579, 584 (1981). Accordingly, CTS instructs, a court must consider "other features of the statutory text," id., before determining whether a statute displaces otherwise applicable statutes of repose.

Nor did the CTS opinion purport to lay out a novel framework for analyzing that question, which might cast doubt on the validity of the analysis

10

used in UBS.[3]  Instead, the Supreme Court reiterated the uncontroversial principle that "[c]ongressional intent is discerned primarily from the statutory text."  Id. at 2185.  While it did state that "invoking the proposition that remedial statutes should be interpreted in a liberal manner" was no "substitute for a conclusion grounded in the statute's text and structure," id., it did not direct courts never to use that canon as an interpretative aid.  Nor did it rule out resort to legislative history in interpreting federal statutes that alter existing statutes of limitations.  In fact, CTS itself relied on § 9658's legislative history, citing a report that was before Congress at the time § 9658 was enacted that explicitly noted the distinction between statutes of limitations and statutes of repose.  Id. at 2186.  The defendants have pointed us to no materials making the same distinction in the FDIC Extender Statute's legislative history.

---

[3] The dissent suggests that the novel ingredient supplied by CTS is its "focus on the central distinction between statutes of limitations and statutes of repose." Dissent at 2 (internal quotation marks omitted).  But the UBS court was fully aware of the import of that distinction.  See UBS, 712 F.3d at 140 (explaining that the two types of statutes "are distinct," that "statutes of repose affect the underlying right, not just the remedy," and that "a statute of repose may bar a claim even before the plaintiff suffers injury, leaving her without any remedy").  Even before UBS, several of our cases drew the distinction, along much the same lines as CTS.  See, e.g., Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n.4 (2d Cir. 2010); P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102–03 (2d Cir. 2004); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998).  CTS's restatement of the differences between the two types of statute thus does not constitute a change in controlling precedent that would allow us to revisit UBS.

Indeed, it is precisely because <u>CTS</u>'s holding is firmly rooted in a close analysis of § 9658's text, structure, and legislative history that it has limited bearing on this case. Although they both have the effect of extending the time to file certain types of claims, the FDIC Extender Statute and § 9658 are structured and worded in fundamentally different ways. Section 9658 reads, in relevant part:

> (a) State statutes of limitations for hazardous substance cases
>> (1) Exception to State statutes
>> In the case of any [toxic tort] action brought under State law . . . , if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
>> (2) State law generally applicable
>> Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all [toxic tort] actions brought under State law . . . .
> . . . .
> (b) Definitions
> As used in this section –
> . . . .
>> (2) Applicable limitations period
>> The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of

12

this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

    (A) In general

    Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

    (B) Special rules

    In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

        (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

        (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658. Section 9658 does not purport to create an entirely new statute of limitations framework for state toxic tort actions; instead, it provides a limited "[e]xception to State statutes," id. § 9658(a)(1), which otherwise remain

"generally applicable." Id. § 9658(a)(2); see also CTS, 134 S. Ct. at 2185 ("Under this structure, state law is not pre-empted unless it fits into the precise terms of the exception."). The exception applies only if the state statute "provides a commencement date which is earlier than the federally required commencement date," 42 U.S.C. § 9658(a)(1), which is defined as "the date the plaintiff knew (or reasonably should have known)" that the injury complained of was "caused or contributed to by the hazardous substance or pollutant or contaminant concerned." Id. § 9658(b)(4)(A). Thus, § 9658's "exception" does not change the length of the applicable limitations period; it simply modifies the time at which the limitations period begins to run, requiring states that do not already do so to apply the "discovery rule."

By contrast, the Extender Statute establishes "the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver." 12 U.S.C. § 1821(d)(14)(A). That limitations period (six years for "any contract claim" and three years for "any tort claim") applies unless "the period applicable under State law" is longer. Id. And the Extender Statute further provides that

> the date on which the statute of limitations begins to run
> on any claim described in [the previous] subparagraph
> shall be the later of –

14

> (i) the date of the appointment of the [FDIC] as
> conservator or receiver; or
> (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B).[4]  Rather than creating a limited exception, the Extender

Statute thus establishes, for "any" action brought by the FDIC as conservator or

receiver, the length of the limitations period, as well as the time at which the

period begins to run.  As we concluded in UBS, this structure suggests that

Congress intended the Extender Statute to supersede any and all other time

limitations, including statutes of repose.

Because of the differences in the statutes, much of CTS's reasoning is

simply inapplicable to the Extender Statute.  For instance, the CTS Court relied

on § 9658's definition of "applicable limitations period" to mean "the period . . .

during which a civil action . . . may be brought."  42 U.S.C. § 9658(b)(2).  It

explained that, technically speaking, only statutes of limitations "limit the time in

which a civil action 'may be brought,'" whereas statutes of repose "can prohibit a

---

[4] In the most common scenario, this provision will operate literally to *extend* the time to file a claim that is not yet time-barred.  The Extender Statute also addresses the situation in which the otherwise-applicable limitations period has already caused a claim to expire before the FDIC's appointment as receiver.  In that situation, the Extender Statute operates to revive the claim, in a limited category of cases, see 12 U.S.C. § 1821(d)(14)(C)(ii), in which the limitations period had expired "not more than 5 years before the appointment of the [FDIC] as conservator or receiver," id. § 1821(d)(14)(C)(i).

cause of action from coming into existence" in the first place.  CTS, 134 S. Ct. at 2187.  The Extender Statute, however, contains no such definition of "applicable limitations period."  Similarly, the CTS Court observed that § 9658 includes an equitable tolling provision for minors and incompetents, 42 U.S.C. § 9658(b)(4)(B), a feature that is typical of statutes of limitations but not of statutes of repose.  CTS, 134 S. Ct. at 2187–88.  But there is no similar tolling provision in the Extender Statute.

The defendants and the dissent make much of the fact that the Extender Statute uses the term "statute of limitations" (rather than "statute of repose"), and uses it in the singular.  In CTS, the Supreme Court noted that § 9658 "includes language describing the covered period in the singular," and observed: "This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes."  Id. at 2186–87.  But first, as we have explained, the Extender Statute's mere use of the term "statute of limitations" does not settle the issue.  As counsel for the defendants conceded at oral argument, Congress has never used the expression "statute of repose" in a statute codified in the United States Code.  Indeed, the very statute of repose on which the defendants rely here is located in a section of the Code entitled "Limitation of actions."  See 15 U.S.C. § 77m.

16

Further, when § 9658 uses the term "statute of limitations," and similarly refers to "the applicable limitations period" in the singular, it is describing the *existing* period that is *modified* by § 9658 and otherwise remains "generally applicable." The Supreme Court thus took the use of the singular as an indication that § 9658 was intended to modify only one limitations period per claim – the period provided by the statute of limitations – and to leave in place the second period provided by the applicable statute of repose. By contrast, when the Extender Statute refers to "the applicable statute of limitations," it is referring to the *new* limitations period that is *created* by the Extender Statute.[5] The fact that the Extender Statute purports to create only one limitations period – rather than a dual statute of limitations/statute of repose framework such as that which ordinarily governs Securities Act claims – does not, standing alone, tell us anything about the number of limitations periods it was intended to displace.

The defendants and the dissent also emphasize that the Extender Statute's

---

[5] Thus, we do not hold, as the dissent suggests, that "when Congress said 'statute of limitations' it also meant 'statute of repose.'" Dissent at 4. For that reason, the dissent's discussion of evidence that Congress knew the difference between the two types of statutes when it enacted the Extender Statute is beside the point. See id. at 2–4. But we note that even on its own terms, the dissent's argument is unpersuasive. Congress has continued to enact statutes of repose under the label "statute of limitations," despite the fact that it has been aware of the distinction since at least the 1980s. See 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) & (II), enacted in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 922(a), 124 Stat. 1376, 1846.

limitations period is tied to the concept of "accrual" of a claim. In CTS, the Supreme Court explained: "A statute of repose . . . is not related to the accrual of any cause of action[, but instead] mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued." Id. at 2187 (internal quotation marks and citation omitted). A statute of repose typically measures that cutoff point "from the date of the last culpable act or omission of the defendant." Id. at 2182. The limitations period established by the Extender Statute, however, runs from "the later of (i) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14)(B). But this tells us only that the Extender Statute is *itself* a statute of limitations, and not a statute of repose. Cf. Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc., 785 F.3d 387, 395 & n.2 (10th Cir. 2015) (holding that the NCUA Extender Statute is a statute of limitations that can be waived, and collecting cases so holding). It provides no guidance on the question whether the Extender Statute *displaces* otherwise applicable statutes of repose – a question on which we must thus defer to our binding UBS precedent.[6]

---

[6] We thus disagree with the dissent that superficially similar "textual markers" in § 9658 and the Extender Statute require us to read the latter as the Supreme Court read the former. Dissent at 7. The dissent errs, in our view, by focusing on those markers in isolation, without considering their place within the larger statutory structure. Instead, "we follow the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it." Hibbs

Finally, the defendants take aim at what they perceive to be UBS's overreliance on the Extender Statute's legislative history and remedial purpose. As noted above, the Supreme Court in CTS directed courts not to treat "the proposition that remedial statutes should be interpreted in a liberal manner . . . as a substitute for a conclusion grounded in the statute's text and structure." CTS, 134 S. Ct. at 2185. The UBS opinion, however, does no such thing. Rather, it begins with two paragraphs of textual analysis, which conclude that "[b]y using these words, Congress precluded the possibility that some other limitations period might apply to claims brought by FHFA as conservator." UBS, 712 F.3d at 142. Only then does it turn to the legislative history, which it considers relevant only "[t]o the extent there is any ambiguity in the words of the extender statute." Id. The UBS panel based its holding on what it determined to be "[t]he more natural reading of the provision, the one that is both inline with everyday usage and consistent with the objectives of the statute overall." Id. at 143, quoting Fed. Hous. Fin. Agency v. UBS Ams., Inc., 858 F. Supp. 2d 306, 316–17 (S.D.N.Y. 2012). It thus used the Extender Statute's legislative history and purpose as a complement to textual analysis, not as a substitute. Accordingly, we perceive

_____

v. Winn, 542 U.S. 88, 101 (2004) (alteration and internal quotation marks omitted).

19

nothing in <u>CTS</u> that undercuts the <u>UBS</u> opinion's analysis of the Extender Statute.[7]

We can dispose of the defendants' other arguments, which are not based on the holding or reasoning of <u>CTS</u>, more briefly. The defendants assert, for instance, that the FDIC Extender Statute does not apply to claims under the Securities Act, and instead applies only to state-law contract and tort claims. The textual basis for this argument is that the Extender Statute sets out limitations periods for "any contract claim" and "any tort claim," without specifically mentioning other types of claims or claims under federal law. 12 U.S.C. § 1821(d)(14)(A). In <u>UBS</u>, however, we squarely rejected that argument with respect to the FHFA Extender Statute, concluding that "a reasonable reader could only understand [that statute] to apply to both the federal and state claims in [that] case." <u>UBS</u>, 712 F.3d at 142. We relied on Congress's "explicit[] stat[ement] that '*the*' statute of limitations for '*any action*' brought by FHFA as conservator '*shall be*' as specified in [the Extender Statute]." <u>Id</u>. at 141, quoting 12 U.S.C. § 4617(b)(12) (emphases in <u>UBS</u>). Because no issue was presented in <u>CTS</u> about the types of claims to which § 9658 applied, <u>CTS</u> has no relevance to that part of <u>UBS</u>'s holding.

---

[7] As noted above, see note 2, our conclusion that <u>CTS</u> does not undermine the displacement of statutes of repose by the various Extender statutes is shared by both of the other Courts of Appeals that have considered the question.

20

Similarly, the defendants and the dissent argue that reading the Extender Statute to displace the Securities Act's statute of repose violates the presumption against repeals by implication, see Auburn Hous. Auth v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002) (acknowledging "the important principle that repeals by implication are not favored"), contending that, under the FDIC's position, the Extender Statute in effect repeals the statute of repose for a class of cases (those brought by the FDIC as conservator or receiver). The dissent further explains that the presumption takes on added importance when it applies to the Securities Act's statute of repose, "a prominent and conspicuous provision in this nation's securities regulation regime" over the past eight decades. Dissent at 8. But the CTS opinion does not even mention the presumption, and the policy arguments raised by the dissent would have applied with equal force in UBS, which also dealt with the Securities Act's statute of repose, but which nevertheless held it to be superseded by the Extender Statute. The presumption against repeals by implication thus does not provide us with any basis for holding that CTS undermines the authority of UBS.

**CONCLUSION**

The defendants have not identified any aspect of the Supreme Court's decision in CTS that requires us to revisit our UBS holding. Accordingly, that holding controls this case, and mandates the conclusion that the FDIC's

21

complaint was timely. The judgment of the district court is vacated, and the case

is remanded for further proceedings consistent with this opinion.

BARRINGTON D. PARKER, Circuit Judge, dissenting:

The FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), extends "statute[s] of limitations" under "State law" for certain "contract" and "tort" claims, and it says nothing whatsoever about statutes of repose. Nonetheless, the majority opinion interprets this statute to impliedly repeal federal and state statutes of repose, including the statute of repose in the Securities Act of 1933, one of its key provisions. That result is not grounded in the text of the Extender Statute. Instead, it is extrapolated from our court's decision in *FHFA v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013), where we held that the FHFA Extender Statute, 12 U.S.C. § 4617(b)(12), which is materially identical to the FDIC's, superseded the Securities Act's three-year repose period. But *UBS* was decided without the benefit of the Supreme Court's subsequent decision in *CTS v. Waldburger*, 134 S. Ct. 2175 (2014). That case discussed, in considerable detail, the differences between statutes of limitation and statutes of repose. *See id.* at 2190. The majority's reasoning fails, in my view, to adequately account for those differences and perpetuates the confusion surrounding the two types of statutes that existed before *CTS*. Accordingly, I respectfully dissent.

The question before the Supreme Court in *CTS* was whether CERCLA's reference to a "statute of limitations" also encompassed a state-law statute of repose, a question of direct relevance to this case. Plaintiffs in *CTS* had brought a nuisance action under North Carolina law, which uses a three-year statute of limitations and a ten-year statute of repose for such tort suits. 134 S. Ct. at 2181, 2184. Because plaintiffs had brought suit well outside the ten-year repose period, their action was untimely unless CERCLA's extender provision, 42 U.S.C. § 9658, delayed the running of both the state-law statute of limitations and the state-law statute of repose. The Supreme Court held that CERCLA's reference to a "statute of limitations" means exactly

1

what it says: it extends only limitations periods, not repose periods. *Id.* at 2182 ("[Section] 9658 mandates a distinction" between "statutes of limitations and statutes of repose.").

The majority contends that *CTS* did not "purport to lay out a novel framework" for determining the scope of an extender provision. Majority Op. at 10. I read the case differently. What the Court did was to focus on the "central distinction between statutes of limitations and statutes of repose" and to make clear that those two types of statutes are "measured from different points," "seek to attain different purposes," and are "targeted at a different actor." 134 S. Ct. at 2182–83. A statute of limitations, the Court emphasized, "creates a time limit for suing in a civil case, based on the date when the claim accrued" and targets a plaintiff's obligation "to pursue diligent prosecution of known claims." *Id.* By contrast, a statute of repose "puts an outer limit on the right to bring a civil action," "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* at 2182. In other words, a statute of repose targets a defendant's right to "be free from liability after the legislatively determined period of time." *Id.* at 2183. Therefore, *CTS* most certainly *does* provide the legal framework for determining the scope of the FDIC Extender Statute.

*CTS* also makes clear that in 1989 when Congress passed the FDIC Extender Statute, it knew the difference between the two types of statutes. After an in-depth historical review, the Court determined that the "general usage of the legal terms has not always been precise, but the concept that the statutes of repose and statutes of limitation are distinct was well enough established to be reflected in the 1982 Study Group Report, commissioned by Congress" as it considered amendments to CERCLA. 134 S. Ct. at 2185–86. "The Report acknowledged that statutes of repose were not equivalent to statutes of limitation and that a recommendation to pre-

2

empt the latter did not necessarily include the former." *Id.* at 2186. The Court observed that "[t]he scholars and professionals who were discussing this matter (and indeed were *advising Congress*) knew of a clear distinction between the two." *Id.* (emphasis added).

If anything, congressional understanding of the distinction between statutes of limitations and statutes of repose only deepened between the 1986 amendments to CERCLA and the 1989 enactment of the Extender Statute. As one court has noted, "an electronic search of the Congressional Record from 1985 until the enactment of [the Extender Statute] reveals at least forty-four separate uses of the phrase 'statute of repose' across twenty-seven different statements by members of Congress." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1039 (C.D. Cal. 2013). That number rises to "fifty-seven separate mentions . . . across thirty different statements" if one searches for "'statute of repose' combined with closely related phrases such as 'statute of limitations and repose.'" *Id.* at 1039 n.3.

Throughout the 1980s, many commentators cited the Securities Act's repose period as a template for various regulatory reforms. In 1987—two years before enactment of the Extender Statute—Judge Frank Easterbrook observed that the 1933 Securities Act and 1934 Securities Exchange Act "called for uniform statutes of limitations *coupled with statutes of repose*." *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir. 1987), *overruled on other grounds by Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir. 1990). Several scholars urged Congress in the 1980s to adopt similar repose periods for other causes of action, including those brought under Rule 10b-5. *See, e.g.*, Louis Loss, *Fundamentals of Securities Regulation* 1166 (1983); ABA Comm. on Fed. Regulation of Sec., *Report on the Task Force on Statute of Limitations for Implied Actions*, 41 Bus. Law. 645, 657–58 (1986). Accordingly, there can be no serious question that Congress

3

understood the distinction between statutes of limitations and statutes of repose in 1989 when it enacted the Extender Statute. In light of this history, the notion that when Congress said "statute of limitations" it also meant "statute of repose" is not viable.

The majority opinion claims that Appellees have failed to overcome *UBS* by "show[ing] that 'its rationale [was] overruled, implicitly or expressly, by the Supreme Court' in *CTS*." Majority Op. at 9 (quoting *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir. 1986)). I disagree. The rationale of *UBS* is that the FHFA Extender Statute displaced statutes of repose because "statute of limitations" was a catch-all limitations period that applied indiscriminately to statutes of repose and statutes of limitations. The court presumed that that Extender Statute displaced statutes of repose, reasoning that "[i]f Congress had really wanted to exclude securities claims from the ambit of HERA's extender statute, it surely would have done so clearly and explicitly." *UBS*, 712 F.3d at 143. But this rationale cannot be reconciled with *CTS*.[1]

When we decided *UBS*, we did not have the benefit of the Supreme Court's identification of the factors relevant to assessing what an extender statute achieves. Consequently, when we concluded in *UBS* that the FHFA Extender Statute reached statutes of repose, we did not, as is now required by *CTS*, examine: (i) the meaning of the term "statute of limitations" when Congress passed the Extender Statute, (ii) Congress' reference to a single limitations period, or (iii) its reference to the accrual date of claims. Instead, we briefly examined the FHFA Extender Statute, highlighted imprecise uses of the term "statute of limitations" in the past, and concluded

---

[1] It is of course settled that our panel is bound by the decisions of prior panels until such time as they are overruled either en banc panel or by the Supreme Court. *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014). However, where, as here, "there has been an intervening Supreme Court decision that casts doubt on controlling precedent, one panel of this Court may overrule a prior decision of another panel." *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010). Importantly, the intervening decision need not address the precise issue decided by the panel for this exception to apply. *Id.*

4

in essence that when Congress referred to a limitations period it was probably talking about both statutes of limitations and statutes of repose, unless it explicitly stated otherwise. *See UBS*, 712 F.3d at 141–43. While I have no quarrel with our court's thoughtful and careful decision in *UBS*, the law changes, and as far as the resolution of this case is concerned, *CTS* changed the law.

The majority reasons that simply because *CTS* deals with a materially different statute, it is largely "inapplicable to the [FDIC] Extender Statute." *See* Majority Op. at 15. That assertion misses the mark. The importance of *CTS* does not depend on whether it dealt with a textually congruent statute. Its importance derives from its instruction on how to read extender statutes. In *UBS*, we reasoned that by extending "*the* applicable statute of limitations" for actions brought by the FHFA as conservator, 12 U.S.C. § 4617(b)(12)(A) (emphasis added), "Congress intended one statute of limitations" to apply to all such actions, 712 F.3d at 143. In *CTS*, however, the Supreme Court treated virtually identical language describing the covered period in the singular as evidence that Congress did not intend to alter "two different time periods with two different purposes." 134 S. Ct. at 2186–87.

The *UBS* panel also reasoned that by providing the statute of limitations for "*any* action" brought by the FHFA as conservator, 12 U.S.C. § 4617(b)(12)(A) (emphasis added), "Congress precluded the possibility that some other limitations period might apply," 712 F.3d at 141–42. But plaintiffs in *CTS* made the same argument and the Supreme Court rejected it. *See* Brief for Respondents at 21, *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) (No. 13-339) (arguing that because the CERCLA provision "applies to 'any action,'" it "comprehensively addresses all state limitations periods"). The Court declined to accept the terms "the" and "any action" as textual indications that CERCLA § 9658 extends statutes of repose because such an interpretation

5

disregards the reality that statutes of limitations and statutes of repose are different. This reasoning is not compatible with the rationale of *UBS* that "[a]lthough statutes of limitations and statutes of repose are distinct in theory, the courts . . . have long used the term 'statute of limitations' to refer to statutes of repose." 712 F.3d at 142–43. Once it is accepted that statutes of limitation and statutes of repose are different, the conclusion that the Extender Statute only extends statutes of limitation follows from a straightforward reading of the Statute, a reading whose correctness is confirmed by multiple markers in the text.

The Statute refers to a "statute of limitations" in four separate places (with a fifth reference in the heading). It says nothing about extending, displacing, or altering any statutes of repose; indeed, it never once mentions the word "repose." Nor does the Extender Statute use any language that could be construed as encompassing statutes of repose—it does not mention "limitation of actions" (the language used in the Securities Act) or any other broad terms that might be read to include periods of repose. Additionally, the Extender Statute, like CERCLA § 9658, refers to the relevant limitations period in the singular, which, according to the Supreme Court, "would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *CTS*, 134 S. Ct. at 2186–87.

The Statute also contains numerous references to the accrual of claims. As *CTS* emphasizes, the time at which a claim accrues is relevant to statutes of limitation, but not statutes of repose. The Extender Statute fixes its start date as an accrual date and provides as one of the options the date on which a state tort or contract claim would otherwise accrue. 12 U.S.C. § 1821(d)(14)(B)(i)–(ii). The other option for accrual, the date of the FDIC's appointment, is the earliest date when the FDIC as a plaintiff could bring a claim on behalf of a failed bank. As the

6

*CTS* Court also observed, it is a statute of limitations, not a statute of repose, that "require[s] plaintiffs to pursue diligent prosecution of known claims." 134 S. Ct. at 2183 (internal quotation marks omitted).

Given these pellucid textual markers, I conclude that when Congress referred in the Extender Statute to the type of time limit that accrues and targets plaintiffs' diligence, it could only have meant a statute of limitations. Even were I persuaded by the majority's theory that the Extender Statute creates a statute of limitations that displaces statutes of repose, Majority Op. at 17, this contention is insufficient to overcome the plain text of the statute, which offers no textual clues suggesting that "statute of limitations" should be read to broadly encompass any applicable limitations period. Courts are not at liberty to selectively pick apart statutes. When two statutes are capable of co-existence, it is our obligation, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Morton v. Mancari*, 417 U.S. 535, 551 (1974). No such intention exists here.

Moreover, the majority's view that Congress, without ever saying so, passed a statute of limitations that somehow eliminated a widely relied on and widely applied statute of repose violates the presumption against implied repeals. The Supreme Court has emphasized in no uncertain terms that "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010). The same presumption applies against modifying or superseding prior statutes by implication. "It does not matter whether this alteration is characterized as an amendment or a partial repeal. Every amendment of a statute effects a partial repeal to the extent that the new statutory command displaces earlier, inconsistent commands, and we have repeatedly recognized

7

that implied amendments are no more favored than implied repeals." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 644, 664 n.8 (2007); *see also In re WTC Disaster Site*, 414 F.3d 352, 366 (2d Cir. 2010) ("The intention of Congress to repeal, *modify* or supersede must be clear and manifest." (emphasis added) (quoting *In re Bear River Drainage District*, 267 F.2d 849, 851 (10th Cir. 1959))); *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 300 (2d Cir. 2006) ("[T]he strong judicial policy disfavoring the inference that a statute has been repealed *sub silentio* by subsequent legislation applies with equal force to claims of implied amendment." (internal quotation marks and citation omitted) (quoting *Regan v. Ross*, 691 F.2d 81, 87 (2d Cir. 1982))).

As this law makes clear, if Congress had intended to do away with a statute of repose, it had to say so clearly and unmistakably. But it didn't. Instead, Congress chose to remain silent, and we are not at liberty to infer displacement from silence. Fidelity to this rule is especially important in the case of a statute of repose that Congress enacted in 1933, that it explicitly modified a year later, and that has been a prominent and conspicuous provision in this nation's securities regulation regime over the ensuing eight decades. *See* Securities Exchange Act of 1934, Pub. L. No. 73-291, § 207, 48 Stat. 881, 908. Statutes of repose confer important substantive rights, and the Securities Act's statute of repose is especially important for issuers and underwriters of securities to be free from near-strict statutory liability three years after the offering or sale of securities. In setting aside the Securities Act's repose period, the majority disrupts a legislative compromise that was at the heart of the 1933 Act. The Act created private causes of action "to insure honest securities markets and thereby promote investor confidence." *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1067 (2014). Those causes of action are

8

"notable both for the limitations on their scope as well as the *in*[] *terrorem* nature of the liability they create." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). "[U]nlike securities fraud claims pursuant to [S]ection 10(b) of the Securities Exchange Act," claims under Sections 11 and 12 of the Securities Act do not require plaintiffs to prove scienter, reliance (in most cases), or loss causation. *Id.* As we have noted, Sections 11 and 12 of the Securities Act "apply more narrowly but give rise to liability more readily." *Id.* at 360.

Because of the relative ease of proving liability, Congress established a strict repose period in the Securities Act based on its "fear that lingering liabilities would disrupt normal business and facilitate false claims." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 105 (2d Cir. 2004) (internal quotation marks omitted). The Act's repose period reflects a legislative determination that, once three years have passed from the public offering or sale of a security, a company's management may treat a securities transaction as closed. *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537, 1546 (3d Cir. 1988). Few compromises in the securities laws are as integral to the operation of the nation's capital markets as this compromise.

I suppose that there may be compelling policy arguments that receivers should be given relief from periods of repose, and I can imagine a robust debate on that topic. But the resolution of competing policy choices is for Congress, not for us. Although reading the Extender Statute to exclude statutes of repose means that the FDIC is able to pursue fewer claims, we are not authorized to fix that problem because we are obligated to read the statute as it is written. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015). "When a statute's language is clear, our only role is to enforce that language according to its terms." *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008).

9

Colonial had a right to sue for alleged misstatements made in connection with the securities it purportedly purchased in 2007. But that right was extinguished three years after the securities were offered or sold to the public. The converse is equally true: three years after offering and selling the securities, Appellees had a substantive right to be free from potential liability. When the FDIC stepped into Colonial's shoes in 2009, it succeeded solely to the "rights, titles, powers, and privileges" then belonging to Colonial, including the bank's three-year extinguishable right to sue on securities that it had purchased in 2007. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994); *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004). When the FDIC filed its Securities Act claims in 2012, the statute of repose had expired. The expiration of that period of repose did not simply mean that the claims could not be made, but it meant that they no longer existed. *See CTS*, 134 S. Ct. at 2187 ("[A] statute of repose can prohibit a cause of action from coming into existence."). A necessary corollary of the majority's reasoning is that Congress, when passing the Extender Statute, brought dead claims back to life. For me, it is several bridges too far to believe that Congress intended that result without so much as a word to that effect. Reading the Extender Statute to mean what it says, I would hold that it did not extend the Securities Act's statute of repose, and I would affirm the judgment of the District Court.